ARMINDA CASTELLI *vs.* ALBERT CASTELLI.

JULY 28, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is a petition for divorce, the only ground alleged being extreme cruelty. After a hearing, the superior court granted the petition and the respondent duly prosecuted his bill of exceptions to this court.

The only exception is to the decision. It is unnecessary to set out in detail all the evidence, which is sharply conflicting on the material issues raised. By way of defense respondent denied that he had been guilty of extreme cruelty toward petitioner, and contended that in any event she had condoned his acts toward her and that her own conduct had not been above reproach.

It appears from the evidence that the parties were married November 11, 1941. They had two children. The petitioner is a registered nurse and after her marriage she continued to work whenever able to do so. The respondent operates a small farm and at times is employed in a mill. Trouble between them started in 1945 and continued until 1952 when petitioner left respondent because of his course of conduct toward her.

There was evidence on behalf of petitioner that after 1945 respondent periodically assaulted and beat her bruising severely her arms, face and chest, all of which injuriously affected her health by causing her to become increasingly nervous. After these attacks by her husband petitioner would usually go to the home of one of her brothers or to her mother's house and stay for several weeks, but eventually she would return to respondent. On one of these occasions she was four months pregnant and the child was dead when delivered. There was further evidence that respondent struck and slapped her frequently, threw a chair and other articles at her, pulled the telephone from the wall,

threatened several times to kill her, and once held a knife against her back. She consulted a doctor about her nervous condition. The respondent also told her it was proper to hit one's wife once in a while if he felt she needed it. The petitioner was corroborated by the testimony of her married sister in respect to certain threats, beatings and bruises administered by respondent and as to her nervous condition. Two other witnesses testified regarding her impaired health and as to seeing severe bruises on her face, arms and chest. In June 1952, following an argument and blows inflicted on her by respondent, petitioner left her husband for good and thereafter filed the instant petition.

The respondent denied beating petitioner or acting violently toward her but admitted arguing with, slapping, and shaking her at times because of her alleged neglect of the children and her failure to properly maintain the home, due to the fact that she insisted on working nights against his will. He also testified that she had always been nervous. Regarding his claim of condonation he testified in substance that about two weeks after the present petition had been served upon him he had marital relations with petitioner in her mother's home where she was then living. This was positively denied by petitioner. On behalf of respondent, several members of his family testified to seeing petitioner at a certain picnic in Goddard Park and also at a dinner in her own house in circumstances they considered improper. One other minor occurrence was also referred to by them. The petitioner testified in explanation of these incidents. The respondent also stated that on a few occasions she came home early in the morning under the influence of liquor after working at night. The petitioner denied this charge.

The trial justice had the duty of weighing the conflicting evidence, drawing reasonable inferences therefrom and passing upon the credibility of the witnesses after observing and hearing them testify, an advantage which we do not

have. The law is well settled that in a case of this kind on conflicting evidence we do not disturb the findings of a trial justice unless we conclude that they are clearly wrong and that his decision fails to do justice between the parties. *Sullivan* v. *Sullivan,* 68 R. I. 25; *Kahnovsky* v. *Kahnovsky,* 67 R. I. 63. This court has also held that what constitutes extreme cruelty as a ground for divorce is not ordinarily the subject of precise definition and each case must be determined upon its peculiar facts. *Tremblay* v. *Tremblay,* 59 R. I. 401. In regard to condonation, the law is fully set out in *Egidi* v. *Egidi,* 37 R. I. 481. In *Mason* v. *Mason,* 46 R. I. 43, 45, it is stated: "Condonation is conditional forgiveness and it is forfeited by further misconduct, and in cases of cruelty treatment much less cruel than would be necessary to be a good ground for divorce will suffice to avoid the defence of condonation."

The trial justice in his decision reviewed all the evidence and among other facts found: "After a careful analysis and weighing of the testimony and the probabilities of the case, I accept the testimony of the petitioner and of her witnesses as being credibly true, and further, as being entirely satisfactory and convincing. I am more than satisfied the charge of extreme cruelty is amply supported by the evidence. I have observed the witnesses. I have given particular attention to both the petitioner and the respondent. I have given close attention to the petitioner's corroborating witnesses. * * * I am far from being satisfied that the respondent's own version of his own life is just as he would want the Court to believe."

In regard to the issue of condonation, the trial justice said: "* * * I believe that the petitioner's testimony which is that at no time following her husband's last striking of her in June when she decided to break away from him * * * was she intimate with her husband. I do not believe the respondent's story in this respect. Therefore, I find that there was no condonation." Respecting the instances in

the nature of recrimination, the trial justice stated in reference to respondent's supporting witnesses: "The trouble with the Castellis of the respondent's family is that they have come here out of plain bias and have completely distorted and exaggerated the true character of the incident." And further he added: "I find that there is no truth or shadow of truth in the insinuation or suggestion of misconduct which the Castellis tried to draw from any of these three incidents or occurrences." In our opinion he gave careful consideration to the conflicting evidence.

Finally respondent has argued that the trial justice, by his questions to witnesses and by his general attitude, showed early in the trial that he had formed an opinion favorable to petitioner and prejudicial to respondent. We have examined the transcript with such contention in mind. In our judgment it is without merit. The respondent received a fair trial. It does not appear that the trial justice, by interference or otherwise, prevented him from presenting his entire case. It is clear that difficulty was encountered with him and some of his witnesses as they testified; that the trial justice as an officer of the state, which has an interest in preserving the marriage status if possible, was interested in obtaining all the available relevant facts; and that occasionally reasonable misunderstandings as to the meaning of certain testimony may have taken place. However, his decision was comprehensive and we find nothing to indicate that he misconceived or overlooked either the law or the evidence, or that he was biased so as to prevent a fair trial to respondent, or that he threatened any witness as alleged. Upon consideration of the whole record and the conflicting evidence we cannot say that the decision is clearly wrong and therefore we will not disturb it.

The respondent's exception is overruled, and the case is remitted to the superior court for further proceedings.

*Charles H. Anderson,* for petitioner.

*Isidore Kirshenbaum,* for respondent.