267 A.2d 390.

PAUL R. POIRIER *vs.* NANCY E. POIRIER.

JULY 10, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

346

PAOLINO, J. This is an appeal from a divorce decree entered in the Family Court.

On February 14, 1968, Paul Raymond Poirer filed in the Family Court of Providence County a petition for divorce on the ground of extreme cruelty against his wife Nancy Elizabeth Poirier. The parties had been married since February 18, 1967.

On February 23, 1968, respondent filed a cross-petition thereto alleging that she had demeaned herself as a faithful wife and performed all the obligations of the marriage covenant. She denied that she had been guilty of extreme cruelty as alleged in her husband's divorce petition and went on to allege that petitioner had been guilty of extreme cruelty in violation of the marriage covenant. She asked that her husband's petition for divorce be denied and dismissed; that a decree be entered divorcing her from bed, board and future cohabitation with petitioner

until the parties became reconciled; and that she be awarded separate maintenance and support, counsel and witness fees, and the permanent use of the household furniture and effects.

The petitions were heard before a justice of the Family Court, commencing on September 19, 1968.

The petitioner's case consisted of his own testimony and that of several other witnesses. Part of petitioner's testimony related to certain activities of respondent. The petitioner testified that respondent told him one evening in December 1967 that she was going out to a shower. She did not return home until 10 a.m. the following morning, and at that time offered as a reason for her absence that she had drunk too much at the shower and could not come home. He testified that, "Later on in the afternoon she told me that there was a story spreading that she had slept with a man that lived in that house."

The petitioner also related that in early February 1968 his wife had stayed out on a Friday night until 2:15 a.m. On the following evening (Saturday) she went out to take her sister roller-skating, called home to tell petitioner that she was needed to baby-sit for the secretary of a club that was having an emergency 11 p.m. meeting, returned home, and immediately left to baby-sit. The petitioner next saw her at midnight of the following night (Sunday). She was asleep when he left for work on Monday and was not at home when he returned from work. He testified that she returned home at 1:45 a.m. Tuesday morning.

When asked by counsel on direct examination on how many occasions his wife stayed out until the early hours of the morning, other than those related, petitioner replied, "Half a dozen."

The petitioner further testified that one evening after going to bed, his wife would not let him sleep and that he had to get up at 4:30 a.m. for a National Guard drill.

"She kept waking me up," he said, "She told me she wasn't going to let me sleep, until the point where I slapped her."

The next witness testified that once while he was in the Poiriers' apartment petitioner went out for milk, leaving respondent in the apartment with the witness and another male. This witness related that respondent locked the door, looked out the window to make sure petitioner was gone, turned on the record player, and then started doing some kind of dance making certain motions with her hands and her body. He said: "* * * she sort of was dancing around and sticking things in my face and run [sic] away."

At this point, respondent's counsel objected to testimony of respondent's conduct. After the trial justice noted that respondent's conduct was an element of her case under the cross-petition, respondent's counsel moved for discontinuance of the cross-petition. The discontinuance was granted.

A friend of respondent for 12 years, who had slept over at the apartment of petitioner and respondent on many occasions, testified that when petitioner was away at Camp Drum, New York, for two weeks' summer reserve training, she stayed with respondent and that on several occasions respondent "* * * would take her wedding bands off and she would flirt, and twice she had a date." She also testified that, on one occasion, she and respondent had returned with their dates to the apartment and that for a period of time between one-half and one hour, respondent and respondent's date were out of her presence.

The landlord who lived on the first floor of the tenement house, testified that during the two weeks petitioner was away at camp, "there were quite a few male persons that went upstairs."

Immediately prior to the close of petitioner's case, his counsel moved to amend the original petition so as to conform to the evidence by adding an additional ground for divorce, that of gross misbehavior and wickedness. Coun-

sel for respondent objected to such amendment. The motion was granted, and respondent took an exception. The respondent then moved that the case be passed to allow for the filing of a motion for a bill of particulars. This motion was denied, and respondent's exception was noted. Then respondent moved for a bill of particulars. This motion was also denied, and respondent's exception was noted. The petitioner then rested his case.

The respondent took the stand and related that while her husband had been away at camp, male friends of her girl friend would come up to the house to meet her girl friend. She also testified that on one occasion, she awoke after going to bed early with her husband and upon entering the living room discovered petitioner sitting on the couch next to her girl friend. After an ensuing argument, she returned to bed. She further testified that when he returned from church the next day, Sunday, petitioner struck her across the face, cutting her lip and bloodying her nose.

The trial justice rendered a decision from the bench in which he granted the husband's petition for divorce "* * * on the grounds of gross misbehavior and wickedness, repugnant to and in violation of the marriage covenant by consorting with various men on divers occasions."

In his decision the trial justice stated that petitioner had impressed the court by his forthrightness and credibility. He said that he could not find sufficient evidence to support a divorce on the ground of extreme cruelty, but a completely different situation was presented by the gross misbehavior and wickedness charge. The court concluded that the wife had not been "playing fair" with her husband and that she had taken advantage of his absence on certain occasions by having dates. The trial justice stated:

"* * * it seems clear that her testimony is not worthy of credence when it is weighed against the testimony of certain disinterested witnesses * * *."

He went on to say that he found nothing inherently incredible in the testimony of the girl friend, and that he believed that respondent had had men at her apartment and had had the opportunity to commit improper acts. He noted respondent's exception to his decision. An interlocutory decree embodying this decision was entered on October 28, 1968. The case is before us on respondent's appeal.[1]

I

The trial justice granted the petition on the grounds of gross misbehavior and wickedness, repugnant to and in violation of the marriage covenant by consorting with various men on divers occasions. The respondent's first contention, as we understand her brief, is that the evidence does not support a finding that respondent was guilty of such conduct. We do not agree.

There is evidence in this record, which if believed, supports the trial justice's finding that respondent was guilty of gross misbehavior and wickedness, repugnant to and in violation of the marriage covenant within the meaning of that ground as defined in *Stevens* v. *Stevens,* 8 R. I. 557. The trial justice expressly stated that he was impressed by petitioner's credibility and forthrightness. At the same time he expressly stated that respondent's testimony was not worthy of credence when weighed against the testimony of certain disinterested witnesses.

This court has held many times that findings of fact made by a Family Court justice on conflicting evidence in a divorce action will not be disturbed unless it is shown that such findings are clearly wrong or that the trial jus-

---

[1]The respondent's claim of appeal treats this proceeding as an appeal from the decision of the trial justice. She is in fact appealing from the decree entered pursuant to the decision, and we shall treat this as an appeal from the decree. *Botelho* v. *Botelho,* 96 R. I. 379, 380, 192 A.2d 5, 6. See G. L. 1956 (1969 Reenactment) §14-1-52.

tice overlooked or misconceived material evidence relevant to the issues decided. *Sundlun* v. *Sundlun*, 103 R. I. 25, 32-33, 234 A.2d 358, 363. The burden of proving that the trial justice was clearly wrong or that he overlooked or misconceived material evidence is on respondent as the appellant. *Calise* v. *Calise*, 100 R. I. 306, 308, 214 A.2d 891, 892. She has not sustained her burden of proof here, and therefore we cannot say that the trial justice overlooked or misconceived material evidence in arriving at his ultimate finding or that such finding was clearly wrong.

## II

The respondent's next contention is that petitioner did not come into court with clean hands. No useful purpose will be served by discussing all of the conflicting evidence relevant to this issue. It is sufficient to point out that the trial justice believed petitioner's version of the relationship between the parties and disbelieved respondent's. In his decision he stated that petitioner admitted that during an incident in September 1967 he had slapped his wife when she insisted on continuing an argument during that night. However, the trial justice did not consider this isolated incident sufficient conduct to bar petitioner's entitlement to the divorce he sought. We cannot say that he erred in so finding. *Brown* v. *Brown*, 94 R. I. 23, 177 A.2d 380, *reargument denied*, 94 R. I. 30, 177 A.2d 629. As the court said in *Calise* v. *Calise, supra*, at 309, 214 A.2d at 893:

> "Conduct provocative of domestic discord as found by this court is something more than mere family controversy and usually is such as to disclose that it would be inequitable to grant relief by way of divorce to one who by his own conduct has provoked or induced conduct in the other spouse that breaches the marital covenant."

The petitioner's admission that he slapped his wife on the night in question in the circumstances then prevailing

did not constitute conduct that was either repugnant to the marriage covenant or provocative of marriage discord within the meaning of the words "without fault." *Lannon* v. *Lannon,* 86 R. I. 451, 454-455, 136 A.2d 608, 609-610.

## III

In subdivision (C) of her brief respondent makes the bare statement that petitioner did not corroborate his charges with the clear and convincing proof that is required by law. This issue has been answered in our discussion of Point I, *supra,* where we held that the trial justice's findings were supported by the evidence. It is implicit in that holding that petitioner had sustained his burden of proof. The respondent's instant contention requires no further discussion.

## IV and V

Under Points IV and V respondent contends that the trial justice abused his discretion in allowing petitioner to amend his petition and in denying her motion for a continuance and a bill of particulars. She has briefed and argued these issues together, and for convenience we shall treat them in like manner. The respondent concedes that the allowance or disallowance of amendments is a matter of discretion with the trial justice and that his rulings thereon are not grounds for reversal in the absence of a clear showing that the discretion was either improperly exercised or that there was an abuse thereof. She has cited many cases, too numerous to discuss here, to support her claim that the trial justice in the case at bar abused his discretion in allowing the amendment.

As we stated above, the allowance or disallowance of amendments is a matter of discretion with the trial justice. Each case must be decided upon its own facts. In the case at bar, respondent, by filing her motion in the nature of a cross-petition, opened up for inquiry and determination

the question of her own conduct. While it is true that during the course of the trial the trial justice granted respondent's motion to discontinue her cross-petition, such a discontinuance did not bar the further admission of evidence on the subject of respondent's conduct. The respondent knew, or should have known, that as a result of the filing of the cross-petition her general conduct as a married woman became a material issue in the case.

In his ruling allowing the petition to be amended the trial justice said:

"At this stage of the proceedings the petitioner has filed with the Court a motion to add an additional ground. This motion has been objected to by counsel for the respondent and the Court's ruling is that under the circumstances in this case where a lengthy cross examination has been conducted by the solicitor for the respondent on all phases of the evidence adduced on behalf of the petitioner that the Court in the exercise of its discretion will permit the petitioner to amend his petition for divorce by adding the additional ground that the said Nancy Elizabeth Poirier hath violated in the same in that she hath been guilty of other gross misbehavior, wickedness in violation of the marriage covenant by consorting with various men on diverse occasions. The Court will further allow the respondent's attorney, if he believes that he has not had sufficient time to cross examine the petitioner's witnesses on this particular ground to recall any of such witnesses that he may wish to recall for that purpose, but the Court will say here and now that it is difficult for the Court to recall any of the direct testimony of any witness that has not been thoroughly cross examined by the attorney for the respondent."

The respondent relies heavily on *Farnell* v. *Farnell,* 60 R. I. 439, 199 A. 445. That case is factually distinguishable from the case at bar and is no help to respondent. In *Farnell, supra,* the court pointed out at 441, 199 A. at 446, that the petitioner was asking permission "* * * to add

an entirely new ground concerning which the respondent did not and could not have received any notice by the service of petitioner's petition upon him." The emphasis in *Farnell* was on the fact that the respondent did not and could not have received any notice concerning the new ground which petitioner in that case sought to add. Under such circumstance (i.e., lack of notice) the court held that the trial justice did not abuse his discretion in denying petitioner's motion to amend.

The facts in the case at bar are entirely different. As we have previously stated, the respondent here knew, or should have known, that by filing the cross-petition she put in issue her own conduct and opened up the doors for petitioner to present any evidence relevant to the question whether she had ever since her marriage demeaned herself as a faithful wife and performed all the obligations of a married person. In his ruling allowing the amendment, the trial justice expressly stated that he would allow respondent, if respondent believed that she had not had sufficient time to cross-examine petitioner's witnesses on this particular ground, to recall any of such witnesses that she may have wished to recall for that purpose. In the circumstances of this case, respondent's claim of surprise is not persuasive, and, in our judgment, the trial justice did not abuse his discretion in granting petitioner's motion to amend. His ruling merely made the petition conform to the evidence. Compare *Sweeney* v. *McKendall*, 32 R. I. 347, 79 A. 940.

We come now to respondent's motion to pass the case. She based this motion on the ground that she had been deprived of an opportunity to file a motion for a bill of particulars and also on the ground that she needed time to investigate several things she thought necessary. She stated, in effect, that mere permission to recall the witnesses for purposes of further cross-examination was not

sufficient to protect her rights. The respondent contends that having granted the motion to amend, the trial justice abused his discretion in denying respondent's motion to pass. We do not agree.

We are convinced from an examination of the entire transcript and from a reading of the trial justice's ruling, that respondent failed to convince the trial justice that her ability to defend had been impaired by the amendment and that the interests of justice required that the case be passed. We therefore find no abuse of discretion here. Compare *McVeigh* v. *McCullough,* 96 R. I. 412, 424-425, 192 A.2d 437, 445. Even if we interpret respondent's motion as a motion to continue, in view of our conclusion of lack of surprise, we cannot say that the trial justice abused his discretion in denying respondent's motion.

Since evidence relating to respondent's gross misbehavior was already in the record when she made her motion for a bill of particulars and since the record shows that respondent had already cross-examined petitioner's witnesses on this issue, we find no abuse of discretion in the trial justice's ruling denying the motion.

Early in the trial respondent moved to exclude all of the witnesses from the courtroom during the giving of testimony at the trial. The respondent contends that the trial justice's denial of this motion constituted an abuse of discretion.

Whatever the rule may be elsewhere, it is well settled in this state that the exclusion or nonexclusion of witnesses is within the sound discretion of the trial justice and that the exercise of such discretion will not be disturbed except in the clearest cases of abuse. *Roy* v. *United Electric Rys.,* R. I., 148 A. 595; *State* v. *Cyrulik,* 100 R. I. 282, 214 A.2d 382. The respondent has failed to persuade us that the trial justice abused his discretion by refusing to exclude the witnesses; nor are we persuaded that we

should reexamine and reconsider our holding in *State* v. *Cyrulik, supra,* that the question of exclusion or nonexclusion of witnesses is within the sound discretion of the trial justice.

We have only considered those reasons of appeal which have been briefed and argued in accordance with our rules; all other are deemed to be waived. *Nelson* v. *Dodge,* 76 R. I. 1, 68 A.2d 51.

The constitutional issues raised by respondent are so lacking in merit as to require no discussion.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the Family Court for further proceedings.

*Harold H. Winsten,* for plaintiff.

*Isidore Kirshenbaum,* for defendant.