340 A.2d 120.

ELISE F. PANSEY *vs.* ROY H. PANSEY.

JULY 3, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is a petition for a writ of certiorari seeking a review of a Family Court decree wherein a husband was ordered to pay support pendente lite for a wife and a minor child, to pay certain expenses for the upkeep of the marital domicile, and to pay a counsel fee to the wife's attorney. We issued the writ and also stayed the operation of the decree pending a hearing on the petition. In compliance with the writ, the pertinent records have been certified to this court by the clerk of the Family Court. Thereafter, the case was returned to the Family Court for a hearing on the wife's motion seeking an award of a counsel fee to defend against the husband's instant petition. After a hearing, a Family Court justice ordered the husband to pay a counsel fee of $1,020.60 within 30 days. The order was duly appealed to this court and was consolidated for hearing with the petition for certiorari.

The wife testified that she required the sum of $275.00 weekly for support for herself and the minor child of the parties. She also testified that her husband owned 2300 shares of Industrial National Bank stock which she saw in June 1972, in a jointly owned safe deposit box. She valued the stock at $60,000 and estimated her husband received from it $2,000 a year. She stated that he also received $10,000 annually from a certain RHP Trust of which he and his father were cosettlors. The wife further testified that her husband received the sum of $1500 yearly from the R. I. Air National Guard and over $20,000 annually as salary from Pansey Weaving Mills, Inc., and that his total annual income exceeded $30,000.

The husband testified that his weekly salary was approximately $190 plus an average income of $15 weekly from R. I. Air National Guard and that he was the sole stockholder of XD-3 Realty, Inc., the owner of the marital

domicile. He testified that he at no time ever owned 2300 shares of Industrial National Bank stock but that he had received 558 shares of Industrial National Bank stock from the estate of his late brother which he used as the corpus for a certain trust known as the R&S Trust. He further testified that certain monies he received from the trustees of the RHP Trust and the R&S Trust were for payment of taxes due and payable on the income of the trusts which under the provisions of the trust agreement were reflected in his personal income tax return. He testified that at various times during the marriage he received sums of money from his father to assist in paying his living expenses. The husband also testified that his tax return of 1972 reflected a total income of $35,000 which for tax purposes included the income from the respective trusts.

According to Petitioner's Exhibit #2, in the course of 3 years the husband received a gross weekly salary from Pansey Weaving Mills, Inc. in the following amounts:

In 1971 the sum of $240.00 weekly;

In 1972 the sum of $240.00 weekly for 16 weeks, and the sum of $255.00 weekly for 36 weeks;

In 1973 the sum of $255.00 weekly.

The husband further testified that he had a balance in his checking and savings accounts of approximately $500.00 and an equity of approximately $200.00 in a 1973 motor vehicle.

The trial justice based his order for temporary support not only on respondent's current earnings, but also on the testimony of his wife that he owned 2300 shares of Industrial National Bank stock and on his interest in the two trusts (RHP Trust and R&S Trust), copies of which are included in the record of the case. Regarding the R&S Trust, the trial justice found that the husband, even though divested of legal title, by reserving the power to change the trustees had such control over the assets of

the trust that it was only one step removed from a dry trust. As to the RHP Trust, which on January 1, 1971, had assets valued at $281,000, the trial justice found that the trustees had the sole, absolute power to invade the corpus and accumulated net income so as to provide support, welfare, medical care, and comfortable maintenance for the husband if his own salary were not sufficient for those purposes.

I

The respondent argues that the trial justice misconceived the evidence and the law when he concluded that respondent's interest in the R&S Trust and the RHP Trust was a part of respondent's estate and was therefore to be considered when assessing the respondent's ability to support petitioner and the minor child of the parties. He points to the terms of the R&S Trust which grant him the right to approve investments and remove the trustees but give him no power to terminate or revoke the trust. He states that although he retained the corpus of the trust as part of his estate for tax purposes, he had nevertheless divested himself of legal ownership and control. He further argues that the only benefits he receives from the RHP Trust are at the absolute discretion of the trustees, even though this trust by its terms is also part of respondent's taxable estate.

In determining the proper amount of support to award for a wife and child out of the husband's estate, the trial justice is required in the exercise of sound judicial discretion to measure the wife's and the child's needs and circumstances against the husband's ability to comply with whatever order he might make. This ability, however, does not rest solely upon the husband's existing earning capacity, but includes other available means of compliance, as well as his capacity to acquire these means by the exercise of reasonable efforts. *Wattman* v. *Wattman,* 109 R. I. 538,

288 A.2d 263 (1972). The question before us is whether the income or corpus of a support or discretionary trust constitutes an alternative means of compliance and therefore may be considered as part of a husband's estate for the purpose of making an award for support of a wife and minor child.

Courts have generally allowed the interest of a beneficiary in a support trust to be subjected to claims for the support and maintenance of a wife and children. *Knettle v. Knettle,* 197 Wash. 225, 84 P.2d 996 (1938); Annot., 91 A.L.R.2d 262 et seq. (1963); 76 Am. Jur.2d *Trusts* §178 (1975). Underlying this rule is the rationale that it would be unreasonable to assume that the settlor of a trust intended to exclude entirely the wife and children of the beneficiary from the benefit of the trust, in the absence of any express language to this effect. *In re Moorehead's Estate,* 289 Pa. 542, 137 A. 802 (1927). An alternative rationale for this rule is that public policy requires that interest of a husband in the income of a trust should be available for the support of a wife and minor child. *Shelley v. Shelley,* 223 Ore. 328, 354 P.2d 282 (1960); Annot., 91 A.L.R.2d 262 et seq. (1963).

It is clear that a husband has a legal duty to support his wife and a father has a legal duty to support his minor children. We hold that these elements outweigh the public policy considerations of allowing an owner of property, in this case a settlor of a trust, to dispose of his property as he pleases and in this case to impose restraints on the disposition of income generated by the property. Restatement (Second) *Trusts* §157 comment *b* at 329 (1959), comes to the same conclusion when it states that,

> "The beneficiary should not be permitted to have the enjoyment of his interest under the trust while neglecting to support his dependents."

Section 157 in pertinent part, reads as follows:

"Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,

    (a) by the wife or child of the beneficiary for support, or by the wife for alimony * * *."

We believe the Restatement rule correctly states the law, and the trial justice, therefore, did not err when he considered the husband's interest in the RHP Trust and the R&S Trust as a basis of the support order. *See also* 2 Scott, *Trusts* §157.1 (3d ed. 1967).

## II

We now turn our attention to respondent's appeal from the Family Court decree of December 26, 1973, wherein he was ordered to pay a counsel fee to petitioner in the amount of $1,020.60. The respondent alleges in substance that the trial justice erred when he considered respondent's interest in the RHP Trust and the R&S Trust as part of his estate in making a determination of respondent's ability to pay a counsel fee for services performed before this court in behalf of petitioner.

We have already held that respondent's interest in the trusts may be properly considered as part of respondent's estate for the purpose of making an award for alimony and support. In our opinion, this same reasoning applies to the determination of ability to pay counsel fees. The trial justice therefore did not err in his finding that respondent had the ability to pay the counsel fee ordered in behalf of petitioner.

## III

The control over the scope and extent of cross-examination is a matter within the reasonable discretion of the trial justice and will be reviewed only for an abuse thereof. *Calci v. Brown*, 95 R. I. 216, 186 A.2d 234 (1962); *Feuti v. Feuti*, 92 R. I. 219, 167 A.2d 757 (1961); *Mikaelian v. Mikaelian*, 86 R. I. 119, 134 A.2d 164 (1957).

The husband concedes that this is the rule, but points out that such discretion may be abused if the trial justice arbitrarily or otherwise improperly limits or refuses to allow cross-examination. He therefore argues that since the wife was allowed to testify that the husband was a co-owner of Pansey Weaving Mills, Inc., he should have been allowed to cross-examine her for the purpose of establishing bias and testing her credibility and that the action of the trial justice in limiting cross-examination made it impossible for him to attack the issue of ownership. Since the ultimate order of the trial justice was not based on ownership of Pansey Weaving Mills, Inc., we do not feel constrained to consider this argument by respondent.

The respondent next argues that the action of the trial justice in limiting cross-examination of the petitioner as to the ownership of 2300 shares of Industrial National Bank stock was an abuse of discretion and constituted reversible error. The petitioner, attempting to justify the trial justice's limitation of cross-examination, argues that respondent's counsel had previously cross-examined petitioner relative to the ownership of the 2300 shares of the bank stock and that the allowance of further cross-examination would have been merely repetitive and of no aid to the court. In our examination of the transcript, however, we have determined that respondent's counsel had specifically reserved the right to continue cross-examination of petitioner.

In a divorce proceeding, the admission or exclusion of testimony will be found to be reversible error only when the trial justice determines a disputed right on the basis of evidence he erroneously admitted or excluded during trial. *Feuti* v. *Feuti, supra.* Here the trial justice specifically stated that the support order was in part based on the ownership of 2300 shares of Industrial National Bank stock. He therefore based his decision at least in part on

104

the very facts which he excluded from cross-examination. This action on the part of the trial justice deprived respondent of an opportunity to question petitioner on an important and crucial part of the case and was clearly an abuse of discretion by the trial justice.

Since it is entirely possible that the trial justice would have reached a different conclusion if the respondent had not been limited in cross-examination, we cannot say that the trial justice's limitation of cross-examination was harmless error. Rather we find it to be prejudicial error which can be corrected only by returning the case to the Family Court for a new hearing.

The petition for certiorari is granted, the decree of July 10, 1973, is vacated, and the papers in the case are ordered returned to the Family Court with our decision endorsed thereon.

The respondent's appeal from the decree of December 26, 1973, is denied and dismissed, the decree appealed from is sustained, and the case is remanded to the Family Court.

*Kenneth J. Macksoud*, for petitioner-respondent.

*Edmond A. DiSandro*, for respondent-petitioner.