Virginia A. **BRIERLY**

v.

Raymond F. **BRIERLY, Jr.**

Nos. 78–151–Appeal, 79–483–Appeal.

Supreme Court of Rhode Island.

June 23, 1981.

Reargument Denied July 16, 1981.

Carolyn Roundey, Rhode Island Legal Services, Inc., Providence, for petitioner.

Kirshenbaum & Kirshenbaum, Alfred Factor, Providence, for respondent.

## OPINION

BEVILACQUA, Chief Justice.

These are consolidated appeals taken by the defendant from a decree of the Family Court adjudging him in contempt for failure to comply with the provisions of a temporary order restraining him from entering the marital domicile and interfering with and harassing the plaintiff, and from a final decree granting the plaintiff an absolute divorce on the ground of extreme cruelty.

On January 6, 1976, plaintiff, Virginia A. Brierly, filed a petition for a bed-and-board divorce on the ground of extreme cruelty. The plaintiff requested that she be awarded custody of and support for the minor children, Christopher and Stacey, as well as support for herself, exclusive use of the marital domicile, and that defendant be restrained from annoying, molesting, or ha-

rassing plaintiff. On February 2, 1976, by consent of the parties, a temporary order was entered by the court awarding custody of the minor children to plaintiff with reasonable rights of visitation to defendant, allowing plaintiff to maintain exclusive use of the marital domicile, and ordering defendant to pay $150 per week for the support of plaintiff and the minor children.

Prior to the hearing on plaintiff's petition for a bed-and-board divorce, she filed a motion to amend the petition to one of absolute divorce. Additionally, both parties filed various motions to have each other adjudged in contempt and defendant also filed a motion to modify and amend the temporary order.

On April 3, 1978, after considering all the motions filed, the trial justice adjudged defendant in contempt for failure to comply with the order entered on February 2, 1976, restraining him from entering the marital premises and enjoining him from striking and molesting plaintiff. The trial justice thereby ordered that in the event defendant was found in contempt of court orders in the future, he would be incarcerated for fifteen days. The trial justice, however, suggested that defendant could purge himself of the contempt by complying with all standing orders of the court. The defendant thereupon appealed from this order.

On January 11, 1979, a hearing on the merits was commenced and after hearing the evidence presented, the trial justice granted plaintiff's petition for divorce on the ground of extreme cruelty and awarded custody of the minor children to plaintiff with reasonable rights of visitation to defendant. In addition, the trial justice awarded plaintiff the exclusive use of the marital domicile and, relying on a finding that defendant was capable of earning at least $17,500 per year, ordered defendant to pay plaintiff $35 per week in alimony and $35 per week in support for each child. Additionally, the trial justice decreed that all arrearages would constitute a lien against defendant's equitable interest in the marital domicile.

The defendant in his appeal raises several issues: (1) that the trial justice abused his discretion in adjudging him in contempt, (2) that plaintiff failed to establish that she was a domiciliary of the State of Rhode Island for a period of one year next prior to the filing of the petition, (3) that the trial justice was wrong in not allowing the minor child of the parties to testify under oath or to be cross-examined, (4) that the evidence was insufficient to support the granting of the divorce on the ground of extreme cruelty, (5) that the order of support was not based upon findings supported by the evidence, and (6) that the trial justice had no authority to establish a lien against defendant's equitable interest in the marital domicile for the purpose of securing past and present support orders.

I

Initially, defendant contends that the trial justice abused his discretion when he adjudged defendant in contempt of the February 2, 1976 order. The defendant asserts that the trial justice acted arbitrarily and capriciously and disregarded the evidence presented.

Essentially, the matter of determining and dealing with contempt is within the sound discretion of the trial justice, "to be exercised in accordance with particular facts and findings as to the extent and willfulness of [defendant's] contempt for the authority and dignity of the court." *Shonting v. Shonting,* R.I., 374 A.2d 797, 798 (1977) (quoting *Hartwich v. Hartwich,* 82 R.I. 54, 57, 105 A.2d 821, 823 (1954)); *Tente v. Tente,* 112 R.I. 636, 639, 314 A.2d 149, 151 (1974). We have often stated that findings of fact by a trial justice regarding matters of contempt will not be disturbed on appeal unless the findings are clearly wrong or the trial justice abused his discretion. *See King v. King,* 114 R.I. 329, 332–33, 333 A.2d 135, 138 (1975); *Tente v. Tente,* 112 R.I. at 639, 314 A.2d at 151. On the conflicting testimony presented in the instant case, the trial justice found that defendant had in fact entered the marital domicile and had struck, molested, and ha-

rassed plaintiff in violation of the order of the court. Upon reviewing the record, we are of the opinion that the trial justice was not clearly wrong, nor did he abuse his discretion in adjudging defendant in contempt.

## II

The defendant next contends that the Family Court lacked jurisdiction to consider the divorce petition because defendant had not sufficiently established domicile by clear and convincing evidence. The defendant claims that to establish domicile, one must prove actual residence and an intention to remain indefinitely. Because plaintiff presented evidence only in regard to actual residence and no evidence of intention to remain indefinitely, defendant thereby argues that plaintiff has failed to sustain her burden of proof concerning domicile.

The plaintiff concedes that proof of domicile requires more than a mere showing of actual residence. She asserts, however, that the mere failure to use the word "domicile" or the lack of express declarations of intent to remain indefinitely are not necessarily determinative of whether or not she has sustained her burden of proving domicile.

General Laws 1956 (1969 Reenactment) § 15–5–12, as amended by P.L.1979, ch. 373, § 11, states that no complaint for divorce will be entertained by the Family Court unless the plaintiff is a domicile inhabitant of this state and has resided herein for a period of one year prior to the filing of such complaint. Accordingly, to establish domicile pursuant to said statute, we have determined that one must be an actual resident in the state and one must demonstrate a good faith intention to live here permanently. *McCarthy v. McCarthy*, 45 R.I. 367, 369, 122 A. 529, 531 (1923). Moreover, plaintiffs must prove domicile by clear and convincing evidence. *Parker v. Parker*, 103 R.I. 435, 441, 238 A.2d 57, 60 (1968). We have posited, however, that the truth of the intention is to be determined upon consideration of all the evidence and that "[a]ctions as well as declarations are to be weighed in the determination of the intention." *McCarthy v. McCarthy*, 45 R.I. at 370, 122 A. at 531.

█ In the instant case, there is no question that plaintiff had been a resident of Rhode Island for at least one year prior to the filing of her petition for divorce. In fact, the record discloses corroborated testimony that plaintiff had resided in Rhode Island for over ten years. Additionally, the record reveals that plaintiff maintained a bank account in Rhode Island, retained a Rhode Island registration on her automobile, was a communicant at a Rhode Island church, and sought exclusive use of the marital domicile in her divorce petition—all actions indicative of an intention to remain indefinitely. Consistent with our prior holdings, all these actions should be considered in determining intent. Thus, a reading of the record clearly manifests that plaintiff met her burden of proving domicile by clear and convincing evidence.

## III

Next, defendant claims that it was reversible error for the trial justice to admit the unsworn testimony of the nine-year-old son of the parties without establishing first that the minor child understood the obligations of an oath. Furthermore, defendant contends that he should have been afforded the opportunity to cross-examine the child. In essence, defendant questions the competency of the minor child to testify.

█ Whether a minor child is competent to testify is a decision that rests primarily with the trial justice who is in a better position to observe the manner of the proposed witness and also the witness's apparent possession of or lack of intelligence. Moreover, the trial justice can resort to any examination of the witness that will disclose his intelligence and his capacity to understand the obligations of an oath. On review, a trial justice's decision will not be disturbed unless the record discloses that it was clearly erroneous. *Wheeler v. United States*, 159 U.S. 523, 524–25, 16 S.Ct. 93, 93, 40 L.Ed. 244, 247 (1895). In such circum-

stances we have likewise stated that "[c]onsiderable latitude must be left to the trial justice on a matter like this, because so much depends upon the impression that the child makes by his behavior on the witness stand." *Pierce v. New England Telephone & Telegraph Co.*, 86 R.I. 326, 330, 134 A.2d 421, 423 (1957); *see State v. Mandarelli*, 105 R.I. 696, 701, 254 A.2d 738, 741 (1969).

 Similarly, we have held consistently that the scope and extent of cross-examination is subject to the exercise of the trial justice's sound discretion. *State v. Anthony*, R.I., 422 A.2d 921, 924 (1980); *State v. O'Brien*, R.I., 412 A.2d 231, 233 (1980). On review, we shall not disturb the determination of the trial justice absent a clear abuse of discretion. *Burns v. Janes*, R.I., 398 A.2d 1125, 1128 (1979); *Pansey v. Pansey*, 115 R.I. 97, 102, 340 A.2d 120, 124 (1975).

In the instant case, the trial justice called the minor child, Christopher, to testify and asked him if he understood what it meant to tell the truth, to which question Christopher replied, "Don't lie." The trial justice then proceeded to ask Christopher a series of questions relative to his relationship with his mother and father. Neither party objected to this procedure employed by the trial justice. It is clear from our reading of the record that the trial justice did not abuse his discretion in that he was attempting only to elicit testimony from the child solely for the purpose of determining visitation rights and only collaterally to support the petition for divorce.

 Additionally, we note that "[i]n a divorce proceeding, the admission or exclusion of testimony will be found to be reversible error only when the trial justice determines a disputed right on the basis of evidence he erroneously admitted or excluded during trial." *Pansey v. Pansey*, 115 R.I. 97, 103, 340 A.2d 120, 124 (1975); *see Watmough v. Watmough*, 430 A.2d 1059 at 1060 (R.I. 1981); *Feuti v. Feuti*, 92 R.I. 219, 224, 167 A.2d 757, 760 (1961). Accordingly, because it cannot be said that the trial justice determined a disputed right based upon Christopher's testimony, the admission and consideration of that testimony, even if erroneous, did not constitute reversible error.

## IV

The defendant next argues that a divorce petition may be granted only when the evidence presented by plaintiff is clear and convincing and is corroborated. Thus, claims defendant, absent testimony to corroborate plaintiff's allegations of cruelty, she failed to meet her requisite burden of proof. We hold that this contention is without merit.

 The record discloses that there was sufficient competent evidence presented to support the findings made by the trial justice. Although defendant presented some arguably contradictory testimony regarding what he thought may have been provocation for his actions, he did not deny that the actions took place. Moreover, contrary to defendant's contention, plaintiff's testimony concerning instances of cruelty were adequately corroborated by the testimony of plaintiff's mother.

We have often stated that in the face of conflicting evidence, it is within the province of the Family Court trial justice to weigh the credibility of witnesses in making findings of fact. *Poirier v. Poirier*, 107 R.I. 345, 350–51, 267 A.2d 390, 393 (1970); *Sundlun v. Sundlun*, 103 R.I. 25, 32–33, 234 A.2d 358, 363 (1967). Unless it is demonstrated that the trial justice was clearly wrong or that he misconceived relevant material evidence, we shall not disturb the findings of fact made below. *Poirier v. Poirier*, 107 R.I. at 350–51, 267 A.2d at 393; *Marcotte v. Marcotte*, 102 R.I. 312, 314, 230 A.2d 429, 430 (1967); *Harwood v. Harwood*, 94 R.I. 165, 166–67, 179 A.2d 317, 318 (1962); *Browning v. Browning*, 89 R.I. 415, 419, 153 A.2d 146, 148 (1959). In the instant case, defendant has failed to demonstrate that the trial justice was clearly wrong or had misconceived or overlooked material evidence. *See Calise v. Calise*, 100 R.I. 306, 308, 214 A.2d 891, 892 (1965). Accordingly, we find that the trial justice did not commit error.

## V

The defendant next contends that the trial justice's order of support was not sup-

ported by the evidence. Specifically, defendant points to the uncontradicted testimony concerning his income and earning capacity and asserts that the trial justice was wrong in ordering defendant to pay $105 per week in alimony and support based upon a finding that defendant was capable of earning $17,500 per year.

In the instant case, defendant testified that he had worked for an engineering company for approximately ten years prior to the filing of these divorce proceedings and that his income for the year that preceded the commencement of the divorce proceedings was approximately $23,000. He further testified that his net earnings for the first two years that he was involved in these divorce proceedings amounted to $5,200 in one year and between $3,000 and $4,000 in the other year.[1] The trial justice, however, after considering all the testimony presented concerning defendant's earnings and expenses, found that defendant's actions amounted to a deliberate abandonment of a lucrative job to avoid payments of support and alimony. Therefore, the trial justice found defendant's testimony not to be credible and determined instead that defendant had the capacity to earn $17,500 per year.

We have said that in determining the amount of child support and alimony to a wife, the trial justice is required in the exercise of sound judicial discretion to measure the needs and circumstances of the wife and child against the husband's ability to comply with whatever order the court might make. *See Pansey v. Pansey*, 115 R.I. at 100, 340 A.2d at 123; *Wattman v. Wattman*, 109 R.I. 538, 540, 288 A.2d 263, 264 (1972). "This ability, however, does not rest solely upon the husband's existing earning capacity, but includes other available means of compliance, as well as his capacity to acquire these means by the exercise of reasonable efforts." *Pansey v. Pansey*, 115 R.I. at 100, 340 A.2d at 123; *see*

*Wattman v. Wattman*, 109 R.I. at 540, 288 A.2d at 264. Thus, it is sufficient if it can be demonstrated that the husband "had the means of earning money had he been so disposed." *State v. Bartley*, 38 R.I. 414, 416, 96 A. 305, 305 (1916); *see Blatchford v. Blatchford*, 67 R.I. 24, 28, 20 A.2d 539, 541 (1941). On review, we note that unless it is demonstrated that the trial justice was clearly wrong in the exercise of discretion, we shall not disturb any findings of fact regarding the orders of child support or alimony. *Castelli v. Castelli*, 82 R.I. 232, 235, 107 A.2d 284, 286 (1954); *Browning v. Browning*, 89 R.I. at 418, 153 A.2d at 148.

Our review of the record convinces us that the trial justice did not abuse his discretion, nor was he clearly wrong in finding that defendant had the capacity to earn significantly more than he had indicated in his testimony. Accordingly, the order of support and alimony will not be disturbed.

## VI

The defendant's final contention is that the trial justice did not have the authority to establish a lien against defendant's equitable interest in the marital domicile for the purpose of securing payment of past and present support orders. In support of his position, defendant relies on *Britt v. Britt*, R.I., 383 A.2d 592 (1978), where we stated that "absent specific statutory authority, [the Family Court] has no power to vest in one party the title to property of the other, or to order one party to convey or transfer certain property to the other." [Citations omitted.] *Id.*, 383 A.2d at 594. Moreover, we noted in *Britt* that nothing in the legislative scheme regarding divorce and separation empowered the Family Court with "the authority to compel a party to forfeit completely his or her interest in real property." *Britt v. Britt*, R.I., 383 A.2d at 595. Since our decision in *Britt*, however, the Legislature has enacted provisions that specifically grant the Family Court the authority to

---

1. At this point, the trial justice noted that defendant's list of expenses was more than double what his purported income was for this period. Additionally, we note that defendant admitted that he could have earned significantly more had he not been so busy litigating his divorce.

make assignments of property in divorce proceedings. *See* G.L.1956 (1969 Reenactment) §§ 15–5–16.1 through 15–5–16.4, as enacted by P.L.1979, ch. 279, § 2. Thus, defendant's reliance on *Britt* is misplaced.

In questioning the authority of the trial justice to establish a lien in these circumstances, defendant is claiming that the Family Court does not have jurisdiction to exercise such power. However, in such a case when the issue of jurisdiction is raised, we refer to G.L.1956 (1969 Reenactment) § 8–10–3.[2] *See Christensen v. Christensen,* R.I., 397 A.2d 900, 901 (1979); *Britt v. Britt,* R.I., 383 A.2d at 594. In construing this statute, we have determined that the Family Court does have "the power * * * to take necessary steps in aid of its divorce jurisdiction to the end that the wife and children might be awarded appropriate amounts for alimony and support and that the estate of the husband could be secured for the performance of any such award." *Rogers v. Rogers,* 98 R.I. 263, 269, 201 A.2d 140, 144 (1964).

Additionally, we note that G.L.1956 (1969 Reenactment) §§ 15–5–16.1 through 15–5–16.4, specifically grants the Family Court the authority in a divorce proceeding to assign or attach the estate of either party to secure payment of child support and alimony, and we note further that the amendment was made applicable "to all petitions pending on the date of passage of this act and to all petitions filed thereafter." Public Laws 1979, ch. 279, § 4.

■ In the instant case, defendant contends that the 1979 amendments do not apply because the absolute decree of divorce was entered prior to the passage of the amendment. The act, however, became effective on May 7, 1979, whereas the absolute divorce decree was not entered until July 2, 1979. Therefore, the divorce petition was pending at the time the act was passed. Thus, we find that the Family Court did have the authority to establish a lien against a party for the purpose of securing the performance of an award of alimony or child support.

The defendant's appeals are denied, the judgments appealed from are affirmed, and the cases are remitted to the Family Court for further proceedings consistent with this opinion.

SHEA, J., did not participate.

---

2. General Laws 1956 (1969 Reenactment) § 8–10–3, as amended by P.L.1980, ch. 54, § 1, *provides in part:*

"There is hereby established a family court * * * to hear and determine all petitions for divorce from the bond of marriage and from bed and board; *all motions for allowance, alimony, support and custody of children, * * * and other matters arising out of petitions and motions relative to real and personal property in aid thereof * * *.*" [Emphasis added.]