**Wendy H. SULLIVAN**

v.

**John F. SULLIVAN.**

**No. 80–445–Appeal.**

Supreme Court of Rhode Island.

June 9, 1983.

Dennis J. Roberts II, Atty. Gen., Jeffrey B. Pine, Sp. Asst. Atty. Gen., for plaintiff.

Albert J. Lepore, George L. Santopietro, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is the defendant's appeal from a decree entered in the Family Court ordering him to pay the sum of $77 per week for the support of his two minor children.

Wendy and John Sullivan were married on August 3, 1973. They separated on April 2, 1979, after two prior separations. In December 1979 Wendy filed a petition for divorce in which she requested, *inter alia,* custody of their two children and support for herself and the children.

At the July 1, 1980 hearing on the divorce petition both parties testified regarding their income and expenses. Wendy Sullivan testified that her expenses were $211.34 per week. She indicated that she had been receiving welfare payments of $78 per week from Aid to Families with Dependent Children (AFDC) for approximately one year prior to the hearing. Wendy anticipated that she would have some additional expenses in the near future. She testified that her son had a hyperactive condition that required medical treatment, necessitating frequent trips to a pediatrician. Therefore, she would need a car and assistance with the costs of operation and maintenance. In addition, she indicated that she intended to send her children to parochial school and would require assistance with tuition. Wendy was then unemployed but intended to return to work as soon as both of her children were in school.

John Sullivan testified that he was employed by the city of Providence and had been since March 1973. He indicated that he was a member of the Laborers' Union and received all the city's benefits, including health insurance, a pension plan, and prepaid legal services. He stated that his gross income was $220 per week and that as of July 1, 1980 he would receive $239 per week.

John testified that his take-home pay was approximately $77 per week. He listed his expenses as equaling $200.82 per week. He explained that approximately $93 of that sum was for payment on various loans that he had incurred over the years. John indicated that $48 per week was deducted from his paycheck to repay loans from Co-Op Credit Union. In addition, $15 was deducted weekly to repay a loan on his retirement fund. He characterized these deductions as "mandatory." He also paid approximately $25 per week and $5 per week on two independent loans. Finally, John testified that he had elected to have $20 per week deducted from his pay before taxes to be placed in a deferred compensation fund. This money was used to establish a trust fund for his minor children and to pay the premiums of a life insurance policy that designated his children as beneficiaries.

After hearing all of the testimony, the Family Court justice granted Wendy Sullivan's petition for divorce. He awarded her custody of the children and found that John was obligated to pay Wendy alimony and to assist in the support of his children. To that end, the trial justice ordered John to pay Wendy $77 per week for the support of their children. John now appeals that portion of the final decree. On appeal, he contends that the trial justice misconceived and overlooked material evidence, applied an incorrect rule of law, and abused his discretion by imposing an onerous burden upon John. For the reasons that follow, we disagree, and affirm the order of the trial justice.

It is well settled that the amount ordered for child support is a determination within the sound discretion of the trial justice. *Brierly v. Brierly,* R.I., 431 A.2d 410, 415 (1981); *Paradiso v. Paradiso,* R.I., 404 A.2d 60, 61 (1979). *See* G.L.1956 (1981 Reenactment) § 15–5–16.2. This court will not disturb that determination on review absent a clear abuse of that discretion. *Brierly,* R.I., 431 A.2d at 415; *Paradiso,* R.I., 404 A.2d at 61. When deciding whether the trial justice abused his discretion, we must

examine the evidence, not to weigh it or to pass upon the credibility of the witnesses, but solely to determine whether there is any competent evidence in the record which supports the decision. *Wattman v. Wattman,* 109 R.I. 538, 540, 288 A.2d 263, 264 (1972).

The guiding principle in setting a child-support award is to balance the needs of the child against the financial ability of the absent parent. *Paradiso v. Paradiso,* R.I., 404 A.2d at 61. A court may consider all relevant factors, including the financial resources and needs of the child and each of the parents, the child's standard of living prior to the dissolution of the marriage, and the child's physical, emotional, and educational needs. Section 15–5–16.2. Furthermore, we have said that the Family Court may " 'consider every factor that would serve to reveal in totality the circumstances and conditions' bearing on the welfare of the children." *Bellows v. Bellows,* 119 R.I. 689, 693, 382 A.2d 816, 819 (1978) (quoting *Cambra v. Cambra,* 114 R.I. 553, 560, 336 A.2d 842, 846 (1975)).

Although the court must consider the absent parent's ability to pay, this ability does not rest solely on his or her present earning capacity. It " 'includes other available means of compliance, as well as [the] capacity to acquire these means by the exercise of reasonable efforts.' " *Brierly v. Brierly,* R.I., 431 A.2d at 415; *Wattman v. Wattman,* 109 R.I. at 540, 288 A.2d at 264. Thus, as we said in *Brierly* and earlier, "[I]t is sufficient if it can be demonstrated that the husband 'had the means of earning money had he been so disposed.' " *Brierly,* R.I., 431 A.2d at 415 (quoting *State v. Bartley,* 38 R.I. 414, 416, 96 A. 305, 305 (1916)).

Our review of the record in this case satisfies us that the trial justice applied the correct law and considered both the needs of the children and the father's ability to pay. We do not believe that he misconceived or overlooked material evidence in reaching his decision. In evaluating John's ability to pay, the trial justice acknowledged that his gross earnings would be approximately $240 per week and recognized the standard deductions for taxes and FICA. He noted the nature of the other deductions to which John had testified. Although John characterized the deductions for his loan payments to Co-Op Credit Union and his retirement fund as "mandatory," the trial justice found that he had voluntarily signed a contract with these creditors to deduct the payments directly from his salary. Although the trial justice did not specify the calculations in his decision, the evidence indicates that John pays approximately $93 per week in loan payments. The trial justice concluded that were it not for his personal financial obligations, John would be able to pay at least the $77 per week for the support of his children which the state had been paying through welfare assistance.

The trial justice evaluated John's resources and his obligations. He concluded that of all John's financial responsibilities his obligation to support his children was paramount and that he had the potential resources to do so. He found that even though this order might require John to declare personal bankruptcy because he would be unable to repay his creditors, it might ultimately benefit him by providing the opportunity to reestablish himself in a position of greater financial stability. In any case, the court found that John was able to acquire the resources to support his children by the "exercise of reasonable efforts." *See Brierly v. Brierly,* R.I., 431 A.2d at 415; *Wattman v. Wattman,* 109 R.I. at 540, 288 A.2d at 264. We cannot say that the trial justice clearly erred in his findings, nor do we believe that he abused his discretion. Accordingly, we shall not disturb the support order of the Family Court.

The defendant's appeal is denied and dismissed, the decree appealed from is affirmed, and the papers in the case are remanded to the Family Court.