Loretta L. FRICKE

v.

Walter H. FRICKE.

No. 82–383–Appeal.

Supreme Court of Rhode Island.

April 26, 1985.

James J. Mullen, Barrington, for plaintiff.

Alan H. Pearlman, Providence, for defendant.

## OPINION

SHEA, Justice.

This case comes before us on appeal by Walter H. Fricke (husband) from an interlocutory judgment entered in the Family Court granting a divorce to each party on the ground of irreconcilable differences. As part of the decision, the husband was ordered to convey or cause to be reconveyed his interest in the marital domicile to Loretta L. Fricke (wife), to pay the sum of $300 per week to the wife as alimony, and to pay a counsel fee to the wife's attorney. The husband was further enjoined and restrained from dealing with the funds in his Keogh Plan and the value or the negotiability of his seat on the Cotton Exchange until such time as he complied with the court's ruling requiring him to execute a DR–20 support-wage assignment form. It is from these orders that the husband appeals. We affirm but remand for further proceedings.

The travel of this case has been inordinately long, encompassing ancillary complaints and appeals in the United States District Court and several lengthy hearings in the Family Court, beginning in 1980 and culminating in the rendering of the trial justice's decision on July 14, 1982, pending entry of final judgment. The parties were married in 1950, and for several years prior to their separation their relationship was less than harmonious. Both parties alleged mental and physical abuse that on occasion necessitated local police intervention. Two children, who have since become emancipated, were born of the marriage. The husband is employed as a marine pilot,

earning $79,000 annually. He is also involved in a commodities business. The wife assisted the husband throughout most of the marriage in providing transportation to and from the various places of the husband's employment as a bay pilot. She also monitored the activities of the New York Stock Exchange on a daily basis and reported the results to her husband to assist him in his commodities business. Assets standing in the husband's name alone included a seat on the Cotton Exchange and benefits under a Keogh Plan. The parties jointly owned the marital domicile located in Cumberland along with undeveloped acreage in Foster, Rhode Island.

The wife's petition for divorce, filed in 1980, included prayers for conveyance of the husband's interest in the marital domicile, alimony, medical coverage, and counsel fees. The question regarding the marital domicile forms the principal basis of this appeal.

## I

### Fraudulent Conveyance

Late in the course of several hearings on the merits in Family Court, the husband was discovered to have conveyed his one-half interest in the marital domicile to Rhode Island Hospital Trust National Bank to satisfy a judgment obtained by the bank against him individually. That judgment was in the amount of $27,000. This transfer was accomplished without the knowledge of the wife, her attorney, or the attorney for the husband. With regard to this transfer, the trial justice entered the following order:

"One of the prayers of the petition was that the respondent be ordered to convey his interest in the marital domicile to the petitioner. It is quite clear that Captain Fricke, in the last several months, has conveyed his interest to the Rhode Island Hospital Trust National Bank. *What his motives were the court can only infer that it was an attempt to avoid the assigning of it to his wife if the court so decided.* The Court finds that the wife

should have the fee simple of the marital domicile and will order Captain Fricke to convey or to cause the reconveyance by paying the Rhode Island Hospital Trust National Bank or by making arrangements with them, or extending his credit so that they in turn will convey the property to Loretta Fricke, and that order must be complied with on or before September 7, 1982." (Emphasis added.)

On appeal, the husband argues that absent a specific pleading, any inference of fraud was unwarranted and illegal. He further challenges the trial justice's authority to order a reconveyance of his interest in the marital domicile. In addition, he contends that the bank was an indispensable party and that in order for the court to act, the bank was required to be joined.

The wife argues that the transfer of the real-property interest occurred during the course of trial, after the husband had testified several times about the ownership of the marital domicile and after the court had indicated that the assignment of the real estate in question was an issue in the petition for divorce. From these facts, she contends, one can draw a clear inference that the transfer was fraudulent in regard to her marital rights. Having stated the parties' positions, we turn to the record to determine what actually occurred before and during the trial.

No one disputes that Rhode Island Hospital Trust National Bank obtained a judgment on December 17, 1981, against Walter H. Fricke individually in the amount of $23,514.74 plus interest, costs, and reasonable attorneys' fees. An execution levy was recorded on January 22, 1982, at 12:10 p.m. on all the right, title, and interest of Walter H. Fricke in and to the real estate in question. A sheriff's sale was scheduled for June 4, 1982, at 10 a.m. The basis of this judgment was a defaulted promissory-note obligation in the amount of $20,000 executed by the husband on or about December 31, 1980. The hearings on the petition for divorce were held on March 30 and

March 31, 1982. On the third day of hearings, April 5, 1982, the parties submitted their respective appraisals of the marital domicile—the wife's for $60,000 and the husband's for $68,000. On April 15, 1982, the fourth day of trial, the husband was asked on direct examination on two occasions if there were any liens or encumbrances on the real estate, to which line of inquiry he replied, "[A]t the moment, not to my knowledge." On the same day the husband testified that it was his desire that the property in Cumberland be sold and the proceeds divided equally. The matter was heard again in part on April 19, 1982, and was continued to May 25, 1982. On May 25 the husband again manifested his interest in equal distribution of the sale proceeds from the real estate. Moments later, still on direct examination, he informed the court that as of May 17, 1982, he had quit-claimed his one-half interest in the marital domicile to Rhode Island Hospital Trust National Bank in satisfaction of a preexisting debt.

■ It is our opinion that the record fully supports the inference drawn by the trial justice that the transfer in question was a fraudulent attempt by the husband to put the property out of the reach of his wife and of the court. Ordinarily, fraud must be specifically pleaded. However, "a trier of the facts may draw reasonable inferences from evidentiary facts in order to establish legal proof." *Menard v. Menard*, 106 R.I. 709, 712, 263 A.2d 98, 100 (1970); *Labbe v. Hill Brothers, Inc.*, 97 R.I. 269, 197 A.2d 305 (1964). Moreover, circumstantial evidence may be considered on the question of fraud, and reasonable inferences may be drawn therefrom as long as they are not based on mere suspicion or conjecture. 37 C.J.S. *Fraud* § 115 at 436 (1943).

■ The evidence in this case shows that the conveyance was made midway through trial at a point when the court was considering the value and extent of the husband's interest in the property in anticipation of a decision about an equitable distribution. It

would appear that the conveyance was made without consideration because there is no evidence of a release in satisfaction of the debt. Thus a serious question is raised of whether the bank could be a bona fide purchaser. Furthermore, the husband's lack of candor with the court casts serious doubt on his credibility. The facts and circumstances shown by the evidence authorized the trial justice to find that the husband had a fraudulent intent in conveying his interest to the bank.

■ In situations in which it is shown that a conveyance has been made to delay, hinder, or defraud creditors, a trial justice is empowered to set the conveyance aside as void against all transferees save bona fide purchasers who take without notice. G.L.1956 (1969 Reenactment) § 6–16–1. It is a generally accepted principle that

> "[w]hen a suit for divorce and alimony is pending or is prospective, the husband can not [*sic*] dispose of his property to another for the purpose of defeating the recovery by his wife of alimony, if such purpose is known to the party taking, or he has reasonable grounds to suspect that the husband intends to accomplish this purpose by his conveyance." *Harrison v. Harrison*, 228 Ga. 126, 126, 184 S.E.2d 147, 148 (1971) (quoting *Bridges v. Donalson*, 165 Ga. 228, 233, 140 S.E. 497, 499 (1927)).

> "This is true even though the deed was made in payment of a valid pre-existing debt due by the husband to the grantee." *Harrison*, 228 Ga. at 126–27, 184 S.E.2d at 148 (citing *McCallie v. McCallie*, 192 Ga. 699, 700, 16 S.E.2d 562, 563 (1941)).

This brings us to the question of whether Rhode Island Hospital Trust was a bona fide purchaser within the meaning of § 6–16–1. Since there is no evidence of a finding in this regard one way or the other, the case must be remanded to the Family Court for a determination of the bank's status. In arriving at this determination, the trial justice may, in his discretion, take such additional evidence as justice and the circumstances will require, including, if

necessary, making the bank a party to these proceedings under the appropriate rules of procedure for domestic relations.

## II

### *Alimony*

In making an award of alimony, the trial justice must consider "the° length of the marriage; the conduct of the parties during the marriage; the health, age, station, occupation, amount and source of income, vocational skills and employability of the parties; and the state and the liabilities and needs of each of the parties." G.L.1956 (1981 Reenactment) § 15–5–16, as amended by P.L.1981, ch. 320, § 1. In the instant case, the trial justice found that the husband had an annual income of $79,000. He further found that the wife's needs were $300 per week, and he ordered the husband to pay the latter amount to the wife. He also ordered the husband to keep in effect Blue Cross or other health benefits during the wife's period of eligibility. The trial justice further found that the wife was unemployable owing to a heart condition for which she was taking medication. The husband argues strenuously that the award of alimony was excessive in light of his income-to-expense ratio and improper in view of the wife's conduct throughout the marriage.

■ On the latter assertion, the husband draws attention to various inconsistencies in the wife's testimony with respect to the injuries she sustained during the parties' confrontations, indicating that they are uncorroborated by medical testimony. He further points to the contents of a tape recording in evidence that was purportedly used in a therapeutic counseling context wherein the wife used vile and abusive language, contradicting her in-court testimony that such usage was foreign to her nature. The court found that although the recording affected her "complete credibility," there were certain events testified to by both parties that lent credence to the course of the marriage and the interplay between the parties. Moreover, the court correctly pointed out that the conduct of both parties must be considered and that even though there may have been "some provocation," the husband "was not justified in striking his wife." In making his award, the trial justice found "a thirty year marriage; we have a woman who isn't well; we have a husband who is earning seventy-nine thousand dollars a year as set forth in his own expense sheet, gross, and he is well able to take care of his wife's reasonable needs." We find no fault with the judge's ruling in this regard.

■ The husband maintains that the trial justice misinterpreted his ability to pay the alimony award. As support of his assertion, he points to the uncontradicted evidence of his living expenses in the amount of $1,696 per week which sum exceeds his annual income. He cites the case of *Masse v. Masse*, 112 R.I. 599, 313 A.2d 642 (1974), for the proposition that the trial court must accept uncontradicted evidence as conclusive unless it is inherently improbable. Although counsel's statement of the general rule is accurate, there is no evidence in this record that the trial judge ignored the uncontradicted evidence as was alleged in *Masse* or that he rejected the evidence without specifying his reasons therefor. *See Hughes v. Saco Casting Co.* — R.I. —, 443 A.2d 1264 (1982); *Correia v. Norberg*, 120 R.I. 793, 391 A.2d 94 (1978). Rather, the trial justice found that the husband had earnings of $79,000 per year, that he was "in good health, and [he was] working all the time," that his weekly expenses of $1,696 included "his business expense, his legal fees, personal line of credit, judgment commodity monitor," and that upon paying the awarded alimony, the husband would "be able to deduct the amount paid from his gross adjusted income, taxable income, and the wife will be taxed upon it." In making an award of alimony, "[e]arnings [are] but one of a myriad of factors that the trial justice weigh[s] and evaluate[s] * * *. [He] also consider[s] the difference in earning power between plaintiff and defendant and weigh[s]

defendant's needs and circumstances against plaintiff's ability to pay." *Whited v. Whited,* —— R.I. ——, ——, 478 A.2d 567, 570 (1984); *see also Pansey v. Pansey,* 115 R.I. 97, 102, 340 A.2d 120, 124 (1975). It is clear from our reading of the record that the trial justice was cognizant of the disparity between the wife's earning capacity and the husband's financial status. We find no fault with his decision.

## III

### Counsel Fees

■ Much of what we have said with respect to the award of alimony is applicable to the allowance of counsel fees since the trial justice must consider the same factors enumerated in § 15–5–16 in determining the amount of counsel fees.

■ The husband takes issue with the order that he must pay the sum of $10,905 for attorney's fees. On June 23, 1982, counsel for the wife testified to the value of her services from April 28, 1980. An affidavit was admitted into evidence enumerating the hours spent and the costs incurred for deposition and transcripts. After considering the testimony and the affidavit, the trial justice found that the charge was reasonable. The husband does not directly attack the reasonableness of the charge; rather, he claims that the award was punitive in nature for what he characterizes as his "active defense" of the case. This argument is bottomed on the fact that throughout the period of this lengthy divorce action, the husband had three attorneys representing him at various stages of the litigation in addition to his own pro se appearances. Although evidence exists in the record that the patience of the court was tested on more than one occasion, we find no evidence of vindictiveness on the part of the court. On the contrary, the trial justice reviewed the reasonableness of the charge, the financial resources, the health, and the employability of both parties. Our review of the record and the trial justice's bench decision per-

suades us that he gave due consideration to the enumerated factors. We adhere to our long-standing rule that a "trial justice is vested with discretion in determining the need and amount of counsel fees and unless such discretion is abused this court will not disturb his decision." *Smith v. Smith,* 88 R.I. 17, 21–22, 143 A.2d 309, 312 (1958).

## IV

### Due-Process/Equal-Protection Considerations

Lastly, the husband attacks the constitutionality of § 15–5–24, as amended by P.L. 1981, ch. 421, § 1, commonly referred to as the wage-assignment statute. The language in effect at the time of this hearing provided that

> "[e]ach judgment containing support provisions and each order for support issued by the family court of this state shall include an order directing the obligor to assign such salary currently due or to be due in the future from the obligor's employer or successor employers to the clerk of the court where the judgment is granted or the order issued, in such amount as will be sufficient to meet the support payments imposed by the court. This wage assignment shall take effect upon application of the person receiving payments or any person or public agency designated to receive such payments, when the requirements of this section have been met."

The statute further provides for a hearing upon request within ten days concerning whether the wage assignment should take effect.

As a result of the husband's refusal to sign a DR–20 wage-assignment form at the conclusion of the hearings in Family Court, the trial justice entered the following order:

> "Until such time as the Defendant signs the DR–20, the Defendant is restrained and enjoined from dealing with in any way the funds in the Keogh Plan and

the value or the negotiability of the Cotton Exchange seat. He is enjoined and restrained from negotiating, selling or in any way dealing with the seat as a right or chose in action, he is not restrained from working under it, but he is restrained from dealing with it, selling it or otherwise cashing in on it. At such time as he signs the DR–20 and delivers it to the Clerk, that order will be vacated."

On appeal, the husband argues, without cited authority, that this ruling constitutes an improper taking of the husband's property, an anticipatory penalty, and a prospective imposition of contempt sanctions without due process of law. He contends further that the statute violates the equal-protection clause of the Fourteenth Amendment of the Constitution of the United States.

 The husband's equal-protection challenge requires little discussion since it assumes that only males fall under the classification of "obligors." Section 15–5–24 is not restricted in its operation to males or females. The objective of the statute is to protect the well-being of those persons to whom support is owed pursuant to a court order. The statutory term "obligor" makes no distinction between the sexes that would necessitate enhanced judicial scrutiny by this court. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Moreover,

> "[u]nless there is a showing that the sexually neutral legislative scheme is a mere pretext designed to effect an invidious discrimination against the members of one sex or the other, the statute will not be considered as violating the [F]ourteenth [A]mendment's guarantee of equal protection." *Harwood v. Harwood,* 120 R.I. 145, 148, 385 A.2d 1055, 1057 (1978) (citing *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974)).

Therefore, we shall move on to the husband's due-process argument, which, like his equal-protection challenge, is unfounded.

 It is fundamental that the Fourteenth Amendment requires notice and an opportunity to be heard before one is deprived of his property or liberty. Here, the husband argues that the court's order restraining him from dealing with the funds in his Keogh Plan or his seat on the Cotton Exchange until such time as he executed the income-attachment form constituted an improper deprivation of his property without due process. In light of the constitutional safeguard contained in § 15–5–24(b) providing for a hearing upon request on whether the wage assignment should take effect, it is difficult to perceive the due-process violation of which the husband complains. Furthermore, it is evident from the record that the trial justice gave an extensive explanation of the ramifications for failure to comply with the court's order of support, including a discourse on the conditional nature of the wage-assignment provision, that is, that its effect is postponed until such time as there is a violation of the support order and an application by the person entitled to receive such support. This being the case, the husband's argument of a due-process violation is hardly plausible.

The case is remanded to the Family Court for further proceedings in accordance with this opinion, the husband's appeal is denied and dismissed in all other particulars, and the judgment appealed from is affirmed.