[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Sitting without a jury, this Court heard the above-entitled matter. Also, before the Court is defendant's motion to dismiss pursuant to R.C.P. 12(b)(6) which was reserved at the time of trial. In the present case Iosif Nisenzon (hereinafter "plaintiff") filed suit against Arthur Sadowski, James Levitt, and Park City Capital concerning a failed real estate investment.
FACTS/TRAVEL
Plaintiff is a Russian immigrant who fled what is now called the Ukraine. Plaintiff came to the United States and found employment with General Electric at one of its plants in Rhode Island. While working at General Electric, plaintiff met Arthur Sadowski who was also employed by General Electric. Plaintiff and Sadowski became friendly often talking during breaks. Sadowski often talked about his real estate investments.
One day, Sadowski telephoned plaintiff at his home and asked plaintiff if he was interested in investing in some real estate. The property was located at lot 377 on Gordon Avenue in Warwick, Rhode Island. Sadowski first asked plaintiff to invest twenty thousand ($20,000) dollars. Sadowski told plaintiff if he invested the capital plaintiff would be a joint owner of the property sharing equally in any profits. Plaintiff then told Sadowski that he would have to consult with his wife concerning the investment.
Plaintiff, after consulting with his wife, then obtained a loan from his sister, Khana Baranchuk, for the twenty thousand ($20,000) dollars. Khana Baranchuk agreed to give plaintiff a check for twenty thousand ($20,000) dollars. Plaintiff endorsed the check and then gave it to Sadowski as payment for the investment. Sadowski also endorsed the check. Plaintiff's Exhibit-13. Plaintiff's and Sadowski's agreement was evidenced by a writing. The writing read "this letter that I Arthur Sadowski am buying Lot 377 on Gordon Avenue, Warwick, Rhode Island, with Iosif Nisenzon. Iosif will pay $20,000 twenty thousand dollars for his share. All profit[s] will be 50% for Iosif and 50% for Arthur Sadowski on what ever we do." Plaintiff's Exhibit-1. This agreement was signed by both the plaintiff and Arthur Sadowski.
Several days later, Sadowski contacted plaintiff and requested an additional ten thousand ($10,000) dollars for which he would sign a loan agreement. This loan was evidenced by a writing and read "Received $10,000 ten thousand dollars from Iosif and Nellya Nisenzon to be paid back at (20%) twenty percent interest one year from this date 1/10/88 January 10, 1988". Plaintiff's Exhibit-2.
Sadowski then purchased the property designated as lot 377 on Gordon Avenue in Warwick, Rhode Island from Richard Lacy and Russell Lacy. Plaintiff's Exhibit-8. Sadowski, however, never included plaintiff in the transaction nor was plaintiff ever recorded as joint owner in the property. Sadowski later transferred the property to his attorney, James Levitt. This transaction took place on September 27, 1988. The deed read that the consideration for the transaction was such that no revenue stamps needed to be affixed. Plaintiff's Exhibit-9.
Plaintiff later learned that he was never recorded as a joint owner in the property. Plaintiff then contacted John DeVito, a lawyer in the State of Massachusetts. On March 9, 1989, DeVito sent a letter to Levitt indicating the substance of the transaction between plaintiff and Sadowski and that plaintiff had never received anything from Sadowski. In that letter DeVito indicated that plaintiff was interested in some security and was willing to discuss a pay back schedule. Plaintiff's Exhibits-3.
On May 1, 1989, Hugh E. Barry, an associate in Levitt's law firm, sent a letter to DeVito. The substance of that letter 1) acknowledged that Sadowski owed plaintiff the debt of thirty thousand ($30,000) dollars; 2) indicated that Sadowski agreed to pay plaintiff back; 3) revealed that Sadowski is not financially able to pay any interest on the loan; and 4) that Sadowski could not provide security for his promise to pay back plaintiff. This letter also indicated that Sadowski had embarked on a rigid debt-payoff schedule. Moreover, the letter stated that Sadowski, last year, chose not to declare insolvency; rather he struggled to begin paying off his obligations. The letter also requested for plaintiff to remain patient for several more months. Plaintiff's Exhibit-4. On June 15, 1989 DeVito then sent another letter to Levitt's law firm. This letter indicated that plaintiff was willing to delay payment until October but also requested a realistic payment plan in writing. Plaintiff's Exhibit-5.
In the meantime, while these negotiations were taking place, Levitt then transferred the property to Park City Capital, a Rhode Island General Partnership. This transaction took place on August 1, 1989. This deed also read that the consideration for the transaction was such that no revenue stamps were required. Plaintiff's Exhibit-10. Levitt was a general partner of Park City Capital. Park City Capital has since been dissolved.
On that same day, Park City Capital granted Omega Financial Corporation a mortgage on the property for one hundred fifty thousand ($150,000) dollars. Plaintiff's Exhibit-11. Later on April 30, 1990 Park City Capital granted a second mortgage on the property. This mortgage was granted to Chariho-Exeter Credit Union for one hundred sixty five thousand ($165,000) dollars. Plaintiff's Exhibit-12.
Finally, on January 17, 1990 Levitt sent DeVito a letter indicating that Sadowski's attempts to sell real estate to satisfy his debts were not as successful as he anticipated. Levitt indicated that Sadowski's indebtedness was approximately ninety thousand ($90,000) dollars. Plaintiff's Exhibit-7. It was at this point that DeVito realized there would be no repayment. DeVito then recommended for plaintiff to engage local counsel to bring suit. On December 17, 1990 plaintiff filed this suit against Sadowski, Levitt, and Park City Capital.
Several days before this matter was reached for trial Sadowski filed a petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the District of Rhode Island, Bankruptcy Court No. 93-10063. Sadowski's filing for Bankruptcy stayed the present action against him pursuant to the Bankruptcy Court's automatic stay provision. The suit against Levitt and Park City Capital, however, was unaffected by the automatic stay. Moreover, Levitt's and Park City Capital's attorney, who is the same individual, did not object to the action proceeding.
The action against Levitt and Park City Capital came before this court for a trial without a jury on January 14, 1994. Plaintiff sought equitable relief against both Levitt and Park City Capital. Plaintiff alleged that Sadowski's transfer to Levitt and Levitt's subsequent transfer to Park City were fraudulent conveyances. Furthermore, plaintiff alleged that Levitt committed fraud by obtaining an interest in the property without disclosing to plaintiff his financial interest in said property. Plaintiff alleges that Levitt had a legal and ethical obligation to inform plaintiff as to his financial interest in said property.
Prior to trial, Levitt moved to dismiss the current action pursuant to R.C.P. (12)(b)(6) for failure to state a ground upon which relief could be granted. This Court ruled that Levitt's motion to dismiss would be reserved until after trial. The Court will first deal with Levitt's motion to dismiss pursuant to R.C.P. 12(b)(6).
MOTION TO DISMISS
Levitt moves to dismiss plaintiff's complaint pursuant to R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted. When ruling on a Rule 12(b)(6) motion, this Court must examine the allegations contained in the plaintiff's complaint in the light most favorable to the plaintiff. Ellis v.Rhode Island Public Transit Authority, 586 A.2d 1055, 1057 (R.I. 1991), Gagnon v. State, 570 A.2d 656, 657 (R.I. 1990). The motion will only be granted when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of the plaintiff's claim. Ryan v. State Department of Transportation,420 A.2d 841 (R.I. 1980).
Levitt, in his closing argument, asserted he owed no duty to his adverse party. In doing so Levitt relies on Peter H. Hurleyv. John E. Fuyat, et als, C.A. No. 92-5082, Savage, J. In that decision, the court was faced with the issue of whether or not there is a private cause of action for violation of the Professional Rules of Conduct asserted by a private litigant against his opposing counsel. There the court ruled to allow such a claim would be in direct contravention of the Rules of Professional Conduct and settled case law. Id. at 21. The court reasoned that attorneys should not have to fear that adverse litigants would use violations of the rules of professional conduct as a sword. Id.
Levitt now attempts to use that same reasoning as a shield and argues that he owed no duty to plaintiff. Levitt's reading ofHurley v. Fuyat, however, is overly broad and his reliance is misplaced. A fair reading of that decision reveals that an attorney may be liable to his or her adverse parties where intentional acts such as fraud, malicious prosecution, collusion and criminal misconduct are alleged. Id. at 28. Our Supreme Court has not yet had the occasion to address this issue. The weight of authority in other jurisdictions, however, imposes liability on attorneys whose conduct is fraudulent. I HAirco., Inc. v. Rapistan Corp., 446 N.W.2d 372, 380 (Minn. 1989); Likouer v. Sunflower Terrace II, 696 S.W.2d 468 (Tx. 1985).
In L H Airco, the court ruled that an attorney who makes affirmative misrepresentations to an adversary, or conspires with his or her client, or takes other steps to conceal a client's fraud from the adversary may be liable for fraud. Id. at 380. The court further stated merely failing to disclose a client's fraud to the adversary will not make the attorney liable. Id.
Rather, there must be a showing that the attorney actively participated in fraudulent conduct. Id.
In the present case, plaintiff does not assert that Levitt merely failed to disclose Sadowski's alleged fraudulent conduct. Rather, plaintiff asserts that Levitt was an active participant in the fraudulent conduct and thus should be held liable. Plaintiff's allegation that Levitt was an active participant in the fraudulent conduct if proven does state a claim upon which relief can be granted. Attorneys who play an active role in fraudulent conduct may be held liable to their adverse party. Accordingly, Levitt's motion to dismiss pursuant to R.C.P. 12(b)(6) is denied. The Court will now address the merits of the case.
Fraudulent Conveyance
Plaintiff alleges that Sadowski's transfer of Lot 377 to Levitt and Levitt's subsequent transfer to Park City Capital were fraudulent conveyances. A fraudulent conveyance is one that has been made to delay, hinder, or defraud creditors. Fricke v.Fricke, 491 A.2d 990 (R.I. 1985). Such conveyances may be set aside as void against all transferees except for bona fide purchasers who take without notice. Id. Additionally, RhodeIsland General Laws 1956 (1992 Reenactment) § 6-16-5 provides that "a transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer and the debtor . . . became insolvent as a result of the transfer . . ."
The initial question the court is faced with is whether or not plaintiff is a creditor who has a claim within the meaning ofRhode Island General Laws 1956 (1992 Reenactment) § 6-16-1. Pursuant to § 6-16-1 a creditor is a person who has a claim. A claim means "a right to a payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature . . . legal [or] equitable . . .". In the present case it is clear that plaintiff is a creditor with a claim. Hugh Barry's letter of May 1, 1989 which was also signed by Sadowski, acknowledged that Sadowski owed plaintiff a debt of thirty thousand ($30,000) dollars. See, Plaintiff's Exhibit-4.
It is similarly clear that Sadowski became insolvent as a result of the transfer of Lot 377. Initially, Sadowski indicated that although he was struggling to pay off his obligations he did not want to declare bankruptcy. See, Plaintiff's Exhibit-4. Sadowski, however, later filed bankruptcy on the eve of this trial.
The issue in dispute is whether or not Sadowski's transfer to Levitt and Levitt's subsequent transfer to Park City Capital were made without receiving a reasonably equivalent values in exchange for the transfers. The transfers of Lot 377 to Levitt and Park City Capital were recorded by two separate deeds. The deeds stated that the consideration for the transaction were such that no revenue stamps were required. Generally, when a deed provides that "no stamps are required" there is not a conclusive presumption that the sale was fraudulent. Halpern v. Pick,522 A.2d 197, 198 (R.I. 1987). Rather, the phrase indicates that no taxes have been paid on the transaction. Id. It may, however, be considered with all the other evidence to determine the nature of the transaction. Id.
In the present case, Levitt testified that no stamps were required because he merely took the property as security for a loan to Sadowski. That loan was for around seventeen thousand ($17,000) dollars. Levitt also testified that he was not aware of plaintiff's interest in the property until March of 1989. He testified that a partner of his in Park City Capital valued the property at ninety thousand ($90,000) dollars. This Court, however, finds that Levitt's testimony is not credible. Levitt himself testified that a partner of his valued the property at ninety thousand ($90,000) dollars, yet he took the property as security for a loan of about seventeen thousand ($17,000) dollars. This transfer was not made with Sadowski receiving reasonably equivalent value in exchange for the property.
Additionally, Levitt's assertion that he was not aware of plaintiff's interest in the property until March of 1989 is equally unsupported. Even assuming arguendo that Levitt was not aware of plaintiff's interest in the property until March of 1989, Levitt still transferred the property to Park City Capital in August of 1989. See, Plaintiff's Exhibit-10. Levitt transferred the property to Park City Capital five months after he was aware that plaintiff had an interest in the property. Subsequent to the transfer, Levitt and Park City Capital then proceeded to grant two mortgages on the property. The first mortgage was granted to OMEGA Financial Corporation for one hundred fifty thousand ($150,000) dollars. The second was to Chariho-Exeter Credit Union for one hundred sixty five thousand ($165,000) dollars. These mortgages amounted to over three hundred thousand ($300,000) dollars yet the property was worth only ninety thousand ($90,000) dollars. Based upon this evidence, it is clear after reviewing the testimony and evidence presented in this case, that the transfers were made without Sadowski receiving reasonably equivalent value. Furthermore, it is also clear that Levitt was aware of plaintiff's interest when these actions were schemed.
For the above reasons, this Court is satisfied by a fair preponderance of the evidence that Sadowski's transfer to Levitt and Levitt's subsequent transfer to Park City Capital constituted fraudulent conveyances under § 6-16-1 of our General Laws. Plaintiff had a claim of thirty thousand ($30,000) dollars against Sadowski, yet Sadowski transferred the property to Levitt, and Levitt transferred it to Park City Capital. These transfers were not made for valuable consideration.
Generally, such conveyances may be avoided. In the present case, however, Park City Capital mortgaged the property to OMEGA Financial Corporation, an Exeter-Chariho Credit Union. There has been no evidence presented in this case that Omega and Chariho-Exeter were not bona fide purchasers. Thus plaintiff must seek a money judgment against Levitt and Park City Capital. A money judgment may enter pursuant to a complaint for fraudulent conveyance against a transferee, where the transferee has disposed of or dealt with the property wrongfully conveyed.Spaziano v. Spaziano, 410 A.2d 113, 115 (R.I. 1980). In the present case, a claim for monetary damage was set forth in the complaint against Levitt and Park City Capital for thirty thousand ($30,000) dollars. Plaintiff is granted a judgment as to its fraudulent conveyance count for thirty thousand ($30,000) dollars against Levitt and Park City Capital.
FRAUD COUNT
Plaintiff has also filed a count based upon common law fraud. Plaintiff alleges that while Levitt was representing Sadowski, Levitt and his agents made representations that payment would be made by Sadowski. Plaintiff further alleges despite these representations, Levitt acquired an interest in the property and encumbered it by mortgages. Plaintiff states he detrimentally relied on these representations made by Levitt and thus is entitled to judgment against Levitt. Levitt does not dispute that representations were made. Rather, Levitt argues he owed no duty to plaintiff and any reliance was not reasonable.
This Court has previously decided that an attorney does owe the adverse party a duty not to actively participate in fraudulent conduct. The issue in the present case is whether or not Levitt's actions were tantamount to fraud. Common law fraud has four elements: 1) a false or misleading statement of a material fact that was (2) known by the defendant to be false and (3) made with intent to deceive, (4) upon which the plaintiff relies to its detriment. National Credit Union AdministrationBoard v. Regine, 795 F. Supp. 59, 70 (D.R.I. 1992); Halpert v.Rosenthal, 107 R.I. 406, 412, 267 A.2d 730, 733 (1970).
This Court has already found that Levitt made representations concerning Sadowski's pay back schedule of the thirty thousand ($30,000) dollars. Levitt had several conversations with DeVito who was plaintiff's attorney. Letters and correspondence were sent from March of 1989 to January of the following year. Levitt never disclosed that he obtained an interest in the property in question. Plaintiff relied upon these representations and sought to resolve the problem between the parties.
Levitt, however, proceeded to transfer the property to his general partnership, Park City Capital, which on that same day encumbered the property with a mortgage. These actions took place in August of 1989 while plaintiff was standing by expecting payment. By the time plaintiff realized that Sadowski would not be able to pay the debt, the property was encumbered for over three hundred thousand ($300,000) dollars and Sadowski was on the verge of bankruptcy.
Plaintiff has met his burden in establishing common law fraud. Plaintiff reasonably relied on Levitt's representations that Sadowski would attempt to pay plaintiff the thirty thousand ($30,000) dollars. Based upon these representations plaintiff waited to take judicial action. Levitt, aware of this, proceeded to transfer and encumber the property. Consequently, the action taken by Levitt and Park City Capital amounted to fraud. For the reasons hereinabove set out, plaintiff is granted judgment as to its fraud count against Levitt for thirty thousand ($30,000) dollars.
Counsel shall prepare the appropriate judgment for entry.