Cesar TAMAYO

v.

Paula ARROYO.

No. 2009–34–Appeal.

Supreme Court of Rhode Island.

April 1, 2011.

Cristine L. McBurney, Esq., for Plaintiff.

Karen Auclair Oliveira, Esq., Lincoln, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on December 1, 2010, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. In this appeal, the defendant, Paula Arroyo (Arroyo or defendant), appeals from a Family Court order in favor of Cesar Tamayo (Tamayo or plaintiff), the father of her child.[1] This appeal stems from a miscellaneous action Tamayo filed in March 2007 seeking to establish custody, visitation and child support for the minor child of the parties, Samantha Tamayo (Samantha or minor child), who was born on November 24, 2005. After reviewing the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown; thus, the appeal may be decided at this time. For the reasons set forth below, we vacate the order of the Family Court and remand this case for proceedings in accordance with this opinion.

## Facts and Travel

After Tamayo filed his petition, Arroyo filed a counterclaim, seeking sole custody, child support, and medical insurance for the minor child. During the trial, the Family Court magistrate heard testimony from plaintiff, defendant, and Lieutenant Colonel Ricottilli (Lt. Col. Ricottilli), an accountant with the Rhode Island National Guard, where Tamayo was working as a military technician and also was a member of the Rhode Island National Guard.[2] Lieutenant Colonel Ricottilli testified about Tamayo's income from both positions. The testimony disclosed that Tamayo received a one-time bonus from the National Guard in March 2007 and also regularly received a "locality adjustment payment."[3] Additionally, although Tamayo's Family Court filings reported he received $1,350 per month in rental income, his 2006 tax return reflected a loss of nearly $18,000 from those properties.

Arroyo testified about Samantha's day-care expenses and also attempted to have the child's former day-care provider testify. However, when plaintiff suggested that defendant's day-care provider might have been paid in cash—which was unreported income—and that she may be in the United States illegally, the magistrate refused to allow the witness to testify without first producing immigration documents and tax returns. The magistrate declared, "[t]here's no way [plaintiff is] paying someone who is not reporting income and [who

---

1. Cesar Tamayo and Paula Arroyo have never been married to each other. Tamayo engaged in an extra-marital affair with Arroyo, which resulted in the birth of their child.

2. In addition to testimony from these witnesses, it appears that there was much discussion between counsel and the magistrate in chambers that is not part of the record, leading to a confusing and incomplete record.

We consistently have condemned this practice.

3. There was no testimony about the locality adjustment payment that was shown on plaintiff's paystub, which was admitted as a full exhibit. Apparently there was a lengthy chambers discussion that was not placed on the record.

is] receiving it under the table." When the witness failed to return to court with these documents, the magistrate drew an inference that she was "cheating the government." He therefore refused to order plaintiff to reimburse defendant for past day-care expenses.[4] With respect to Arroyo's prospective day-care expenses, counsel suggested that plaintiff's mother, or wife, to whom he was married at the time Samantha was born, could care for the child at no cost to the parties. However, no evidence was introduced about the validity or viability of this offer.

In February 2008, the magistrate issued a bench decision and an order that provided in relevant part: "As to [p]laintiff's BAQ military income, which is [nontaxable] and not reportable to the Internal Revenue Service, and which is received by him on a regular basis, that income is excluded from the calculation of this [Child–Support] Order." The magistrate's wording with respect to plaintiff's "BAQ income" has led to some confusion, specifically because it appears that he used the term interchangeably with "locality pay," notwithstanding that the terms have very distinct meanings. "BAQ" is a colloquial term for "basic allowance for quarters;" it refers to an allowance that members of the military receive for housing if they are not assigned to a military housing facility. 37 U.S.C. § 403(a)(1). "Locality pay," on the other hand, is a cost of living benefit that any federal government employee may receive based on his or her geographical assignment. 5 U.S.C. §§ 5301, 5304. When pressed about which benefit he was excluding, the magistrate responded, "reg-

ulatory or locality pay," or "other income that he receives which would be generally speaking for quarters, uniforms, et cetera[.]" Our careful review of the record discloses that there was no evidence that plaintiff received "BAQ income" and therefore that payment, if any, is not before us. However, evidence concerning plaintiff's locality adjustment payments was misconceived by the magistrate.

The order also excluded any income Tamayo received from his rental properties, based on the magistrate's finding that these properties generated a loss, as reported on his 2006 tax return. Additionally, as to Arroyo's day-care expenses, the order states that there would be no retroactive payment of day-care costs by Tamayo because of the "inference drawn by this [c]ourt that there have been cash payments by [defendant] to [the day-care provider], * * * [and] that she is cheating the government." With respect to prospective expenses, the magistrate ordered that "[i]f [defendant] opts to use the [day-care] provider that she has, the obligation for [day care] would be 100 percent hers because there is in fact free day care available." Finally, rather than establishing a specific amount of child support as is required by the guidelines, the magistrate directed the attorneys to draft an agreed-upon order that simply reiterated his bench decision. Therefore, to date, no specific dollar amount for the support of this child has been ordered.

Arroyo sought review of the magistrate's decision, in accordance with G.L. 1956 § 8–10–3.1(d),[5] arguing that the mag-

---

**4.** We look with disfavor upon the magistrate's handling of this witness. After being informed of potential Internal Revenue Service (IRS) and deportation consequences, the witness nevertheless elected to testify. However, the magistrate inappropriately refused to allow her to do so. We know of no law or

court rule that requires a witness to prove his or her legal status or compliance with federal tax laws as a condition precedent to testifying in our courts.

**5.** General Laws 1956 § 8–10–3.1(d) provides in pertinent part:

istrate erred with respect to these findings. In a written decision and order entered in November 2008, all but one of the magistrate's findings were affirmed by the then-chief judge of the Family Court.[6] Arroyo appealed to this Court and argued the same issues that were challenged below. The plaintiff asks this Court to affirm the Family Court's order and alternatively argues that this appeal is not properly before the Court.

### Standard of Review

■ General Laws 1956 § 15–5–16.2(a) "provides that the Family Court 'shall order either or both parents owing a duty of support to a child to pay an amount based upon a formula and guidelines adopted by an administrative order of the [F]amily [C]ourt.'" *Waters v. Magee,* 877 A.2d 658, 665 (R.I.2005) (quoting § 15–5–16.2(a)); *see* Family Court Administrative Order 87–2. "It is well established that the appropriate award of child support is to be determined by the trial justice in his or her sound discretion, and we shall not disturb such a determination on review absent a clear abuse of that discretion." *Mattera v. Mattera,* 669 A.2d 538, 542 (R.I.1996); *see Gibbons v. Gibbons,* 619 A.2d 432, 435 (R.I.1993); *Sullivan v. Sulli-*

*van,* 460 A.2d 1248, 1249 (R.I.1983); *Brierly v. Brierly,* 431 A.2d 410, 415 (R.I.1981).

### Analysis

### I

### Jurisdiction

■ The plaintiff first argues that this case is not properly before the Court on direct appeal. The plaintiff correctly states that G.L.1956 § 14–1–52(b) governs the method of seeking appellate review of a modification of a child-support order. Rather than filing a direct appeal, a party seeking relief from a modification of a child-support order must file a petition for writ of certiorari and will be heard by this Court only if the discretionary writ is issued.[7] The plaintiff contends that this is an appeal from a modification of a child-support order for which review by way of petition for certiorari is required. We reject this contention. The order that is the subject of this appeal is the only child-support order between these parties; it neither modifies nor supplants any prior child-support order and, because the parties are not married, the order is not part of a decision pending entry of final judgment of divorce. Therefore, the provisions of § 14–1–52(a) are controlling, and defendant appropriately has invoked this

"A party aggrieved by an order entered by a magistrate shall be entitled to a review of the order by a justice of the [F]amily [C]ourt. Unless otherwise provided in the rules of procedure of the [F]amily [C]ourt, such review shall be on the record and appellate in nature."

**6.** The magistrate also found that Tamayo was entitled to a credit for adding Samantha to his health insurance. The reviewing judge determined that the magistrate erred because there was no evidence that this insurance cost Tamayo anything. That issue was reversed and remanded for the magistrate to determine whether Tamayo had incurred any costs, and is not before this Court.

**7.** General Laws 1956 § 14–1–52 states in pertinent part:

"(a) From any final decree, judgment, order, decision, or verdict of the [F]amily [C]ourt, except as provided in subsection (b) of this section, there shall be an appeal to the [S]upreme [C]ourt * * *.

"(b) Every person aggrieved by any * * * order * * * of the [F]amily [C]ourt relating to *modification* * * * of child support, [may] * * * seek review of questions of law in the [S]upreme [C]ourt *by petition for writ of certiorari* * * *. [T]he [S]upreme [C]ourt may, if it sees fit, issue its writ of certiorari to the [F]amily [C]ourt * * *." (Emphases added.)

Court's jurisdiction to decide the issues raised in this appeal.

## II

### Child–Support Order

#### a) Policy of Child–Support Guidelines

 The Family Court Child–Support Guidelines & Administrative Order (child-support guidelines) "are based on the incomes of both parents" and are designed to afford "the children of the parties the greatest possible support." Family Court Administrative Order 87–2, I.;[8] *see* § 15–5–16.2(a). We consistently have stated that "[t]he guiding principle in setting a child-support award is to balance the needs of the child against the financial ability of the absent parent." *Paradiso v. Paradiso*, 122 R.I. 1, 3, 404 A.2d 60, 61 (1979). "A court may consider all relevant factors, including the financial resources and needs of the child and each of the parents * * * [and] the Family Court may 'consider every factor that would serve to reveal in totality the circumstances and conditions' bearing on the welfare of the children." *Sullivan*, 460 A.2d at 1250 (quoting *Bellows v. Bellows*, 119 R.I. 689, 693, 382 A.2d 816, 819 (1978)). This Court defines a parent's ability to pay very broadly, to "provide the child or children with the greatest possible support." *Lembo v. Lembo*, 624 A.2d 1089, 1090 (R.I. 1993); *see Adam v. Adam*, 624 A.2d 1093, 1097 (R.I.1993); *Sullivan*, 460 A.2d at 1250; *Brierly*, 431 A.2d at 415.

#### b) National Guard Income

 The magistrate determined that Tamayo's child-support obligations would be based on both his military and civilian

earnings, but would not include "other income that he receives which would be generally speaking for quarters, uniforms, et cetera, which is received on a regular basis[,]" because such income was not reportable to the IRS. Additionally, the magistrate did not indicate whether the one-time bonus plaintiff received was included in the child-support order. In both respects, we are satisfied that, in failing to make such a finding, the magistrate erred.

The starting point for determining whether a parent's income will be included for child-support purposes is the definition set forth in the child-support guidelines. Such income:

> "[I]ncludes, but is not limited to, income from salaries, wages, commissions, *bonuses*, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, worker's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and alimony or maintenance received, *and all other forms of earned [or] unearned income*. Specifically excluded are benefits received from means-tested public assistance programs * * *." Family Court Administrative Order 87–2, IV. B.1. (Emphases added.)

The child-support guidelines provide an expansive definition of income, providing a non-exhaustive list of types of income and ending with a catchall provision for *all* other forms of income, whether earned or unearned. The only types of income excluded are "benefits received from means-tested public assistance programs." *Id.* The child-support guidelines also include as income "[e]xpense reimbursements or in-kind payments received * * * if they

8. The guidelines were originally promulgated in 1987. Although the child-support schedule has been amended every five years, each amended order states that "[t]he instructions for the use of the [g]uideline worksheet set forth in prior Administrative Order 87–2 should continue to be followed."

are significant and reduce[ ] personal living expenses." *Id.* Significantly, the definition of income is not in any way related to whether it is reportable to the IRS.

Throughout the trial, the magistrate made it clear to the parties that he was not going to include nontaxable income in the child-support order. Because there is not an exception for nontaxable income in the child-support guidelines, we deem this holding to be erroneous and contrary to the inclusive definition of income set forth in the child-support guidelines. Further, because locality adjustment pay addresses the recipient's cost of living, this amount should have been viewed as income based on the clear mandate that "[e]xpense reimbursements or in-kind payments received [shall be considered income] * * * if they are significant and reduce[ ] personal living expenses." Family Court Administrative Order 87–2, IV.B.1. By failing to include locality pay as income, the magistrate misconceived the evidence and committed legal error.

■■ We next address the magistrate's reliance on Tamayo's 2006 tax return notwithstanding that more recent information—such as evidence of plaintiff's 2007 income—was available for review. We are satisfied that the magistrate abused his discretion by confining his review to the plaintiff's 2006 reported earnings. Additionally, the magistrate should have included plaintiff's one-time bonus, in accordance with Family Court Administrative Order 87–2. It appears that the magistrate overlooked this evidence. On remand, we direct the Family Court to calculate the child-support payments based upon plaintiff's income as set forth in his employment records, without regard to whether that income is taxable income or reportable on his tax returns.

### c) Rental Income

■ In addition to an expansive definition of "income" for purposes of child support, the child-support guidelines provide that "income and expenses from self-employment or operation of a business should be *carefully reviewed* to determine an appropriate level of gross income available to the parent to satisfy a child support obligation. *In some instances, this amount will differ from a determination of business income for income tax purposes.*" Family Court Administrative Order 87–2, IV.B.1. (Emphases added.) Although Tamayo reported on his financial statement that he received approximately $1,350 in monthly income from his various rental properties, he testified that he had operated those properties at a loss, as reported on his 2006 income tax return. In finding that defendant was not entitled to benefit from any of plaintiff's rental income, the magistrate relied on his 2006 income tax return and failed to perform the careful review of plaintiff's rental income and expenses as required by the child-support guidelines. The magistrate chose to ignore the abundance of testimony presented on this issue. He based his decision solely on Tamayo's 2006 tax return, in contravention of the guidelines' explicit instruction that rental and business income may be different for child-support purposes, a reflection of the fact that taxable income does not always indicate one's ability to pay. On remand, we direct the Family Court to carefully review and analyze plaintiff's rental income and expenses and make specific findings about the amount, if any, available to support this child.

### d) Day-care Expenses

■ The guidelines allow for reimbursement of child-care expenses, conditioned on such costs being "reasonable; that is, such costs should not exceed the level re-

quired to provide quality care for the child(ren)." Family Court Administrative Order 87–2, IV.B.7.a. The defendant testified that she was spending approximately $140–150 per week on day care. Instead of determining whether these costs were reasonable, the magistrate relied on plaintiff's assertions that Arroyo's provider was not reporting her income to the IRS and that Tamayo's wife and his mother were willing and able to provide day care for free. He eventually held that Arroyo was not entitled to reimbursement for past or future day-care expenses. We deem this a clear abuse of discretion.

The sole criterion of whether a parent's day-care costs may be included in the child-support calculation is whether those costs are reasonable. Family Court Administrative Order 87–2, IV.B.7.a. Here, the magistrate's sole focus centered on whether the child's day-care provider was "cheating the government" and inappropriately required Arroyo to choose between placing the child with the plaintiff's family or shouldering the expenses herself. These considerations were especially egregious given that no evidence was presented about either issue. We therefore hold that Arroyo is entitled to reimbursement for a portion of the day-care expenses, made retroactive to the date of the petition. We remand this case to the Family Court for a calculation, based solely on the reasonableness of the day-care expenses as provided in the child-support guidelines.

## Conclusion

For the reasons stated, the defendant's appeal is sustained. The order of the Family Court is vacated, and the papers in the case are remanded to the Family Court for further proceedings in accordance with this opinion.