March 1, 2022

**Supreme Court**

No. 2020-49-Appeal.
No. 2020-50-Appeal.
(P 17-3886)

Elida Mezini                    :

v.                             :

Leart Mezini.                  :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2020-49-Appeal.
No. 2020-50-Appeal.
(P 17-3886)

Elida Mezini                    :

v.                              :

Leart Mezini.                   :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**  Before this Court are consolidated cross-appeals by the plaintiff, Elida Mezini, and the defendant, Leart Mezini.[1]  The appeals, arising from a contested divorce proceeding, came before the Supreme Court on January 27, 2022.  The defendant asserts that the trial justice erred in (1) awarding the plaintiff one-half of the appreciation value of the marital domicile; (2) awarding the plaintiff one-half of the defendant's interest in GM Realty Associates, LLC; (3) assigning a home-equity line of credit debt to the defendant; (4) awarding state and federal income-tax refunds to the plaintiff; (5) setting the amount of the defendant's weekly child support obligation; and (6) awarding the plaintiff a 100-percent interest in her retirement plan and a vehicle, and allowing her to claim the

---

[1] The parties' first names will be used throughout this opinion to avoid confusion. No disrespect is intended.

parties' minor child as a dependent on both her state and federal income-tax returns. In her cross-appeal, the plaintiff asserts that the trial justice erred in failing to award her one-half of the value of the reduction of the mortgage on the marital home. For the reasons set forth below, we affirm the decision pending entry of final judgment of the Family Court.

## Facts and Travel

The parties were married on May 2, 2012, in East Providence, Rhode Island. The marriage produced one child, born January 7, 2013. Elida began working as a bank teller at Navigant Credit Union in November 2013. She initially worked part-time, but began working as a full-time teller when the minor child was around eighteen months old. At the time of trial, Elida earned approximately $50,000 a year.

Leart testified that he is employed by DEA, LLC d/b/a Wine & Cheese Restaurant (Wine & Cheese), a corporate entity formed prior to the marriage, of which he is a part owner. Leart devoted approximately forty to fifty hours a week to the operation of Wine & Cheese, and, he testified, he would write himself a check for wages based on what the restaurant could support. Leart also owns a one-half interest in GM Realty Associates, LLC (GM Realty), a limited liability company formed on May 2, 2013. GM Realty is a real estate investment company that has purchased and sold approximately four to five houses. Leart testified that he claims

100 percent of the profits and losses of GM Realty. Leart's adjusted gross income for tax year 2016 was approximately $122,000; for tax year 2017 his adjusted gross income was approximately $54,000.

During the marriage, the parties lived at a home on Jenckes Hill Road in Lincoln, Rhode Island (the Lincoln property). Leart had purchased the Lincoln property prior to the marriage, in 2003, for $490,000; it was owned exclusively by Leart prior to and during the marriage. He had made a $100,000 down payment on the property at the time of purchase, and, he testified, he held a twenty-year mortgage on the property with an outstanding principal balance of approximately $340,000 at the time of trial. The parties lived at the Lincoln property with their minor child and Leart's parents. Elida testified that, during the marriage, a boiler was replaced, the exterior of the house was painted, the driveway was resurfaced every couple of years, and Leart and his father landscaped the Lincoln property, including planting and trimming trees. Leart disputed these improvements, instead testifying that the boiler was never replaced and was original to the house, that the exterior of the house was never painted, and that the landscaping was never redone aside from cleaning the leaves and cutting the grass.

Leart testified that in January 2017 he was experiencing economic difficulties with his businesses and Elida suggested that he apply for a line of credit secured by the Lincoln property (the HELOC). Leart testified that he was responsible for

- 3 -

making all withdrawals from the HELOC, as well as making payments. Leart originally testified that he used the HELOC only to pay for "many family expenses." However, when confronted with his sworn interrogatory answers during trial he admitted that in those answers he stated that the HELOC was used "for legal fees prior to this divorce involving [a] dispute with * * * my partner at Wine and Cheese restaurant" and that Elida "is not responsible for any of these debts." Leart also testified that, although he customarily paid the real estate taxes for the Lincoln property in cash, in 2018 he used the HELOC to pay the tax bill. At the time of trial, the HELOC had an outstanding balance of approximately $82,500.

Regarding child-rearing and domestic work, Elida testified that, while she was working, Leart or his parents would take care of the minor child. Leart testified that if he and Elida were both working, his mother would care for the minor child. Elida also testified that, when she was not working, she would do the laundry, dishes, and cleaning, would take the minor child to activities and doctors, and would take time off from work to care for the minor child if the child was sick. Elida admitted that Leart's mother did most of the cooking, and Leart testified that his parents were "always helping, helping with the child and helping with the house chores, cooking, cleaning."

Elida testified that the parties' marital problems began approximately a year after the minor child was born and included arguments over "[v]ery silly little

things," including house décor, clothes, and what was on the television. Elida stated that arguments with Leart also ensued regarding raising the minor child, including whether the child should be allowed to continue bottle feeding and whether the child should be allowed to sleep during the day.

In July 2017 the parties separated, and Elida initiated divorce proceedings on July 20, 2017, citing irreconcilable differences. Leart filed a counterclaim for divorce on the grounds of irreconcilable differences. The case was heard on six dates between July 2018 and early 2019 before a justice of the Family Court. Leart and Elida both testified, and each party presented an expert witness relative to the appraisal of the Lincoln property and another real estate parcel, located on Scituate Avenue in Cranston, Rhode Island (the Scituate Avenue property).

On November 22, 2019, the trial justice issued an extensive written decision granting each party a divorce "on the grounds that irreconcilable differences exist * * * which have cause[d] the irremediable breakdown of the marriage[.]" The trial justice reviewed the testimony adduced at trial, and found that Elida's "testimony was forthright and credible[,]" while Leart's testimony was "less than credible and at times * * * outrageous and completely unworthy of belief[.]" He made a total of forty-three findings of fact.

The trial justice awarded joint custody of the minor child to the parties. He found that Elida earned an annual salary of approximately $50,000 and that Leart's

annual earnings were $180,000; the trial justice therefore ordered that Leart was obligated to pay Elida $277 per week in child support. The trial justice additionally found that Leart held a 50 percent interest in GM Realty and that the company's assets consisted of the Scituate Avenue property. The trial justice accepted the "well-reasoned" appraisal proffered by Elida's expert witness and found that the Scituate Avenue property had a fair market value of $255,000. Accordingly, he found "that the marital portion of the same attributable to the parties is * * * $127,500" and that Elida's interest was $63,750; the trial justice ordered Leart to pay Elida $63,750.

With regard to the Lincoln property, the trial justice found that it was acquired by Leart prior to marriage, but had "appreciated in value during the parties' marriage, due to the efforts of both parties[.]" The trial justice accepted the testimony of "[b]oth appraisers" that the Lincoln property's value had increased approximately $90,000 "from the date of marriage to the date of trial[.]" Accordingly, the trial justice ordered Leart to pay Elida $45,000, representing one-half of the increase in value of the marital domicile. The trial justice also found that Leart took out the HELOC on the Lincoln property, which had a balance due and owing of $82,000 at the time of trial. The trial justice found that the HELOC was not a marital debt, "based upon the actions of the [d]efendant, and his testimony regarding payment of

various bills from said line of credit, which in the past were paid by him from cash";
the trial justice ordered that Leart "shall be responsible for the line of credit[.]"

The trial justice also found that (1) $20,524 in federal and state tax refunds
being held were "marital in nature" and that Elida should be assigned the entire
amount due to "the dissipation of assets by [Leart], his lack of candor in terms of
revealing marital assets, and his complete lack of credibility as to cash deposits"; (2)
Elida would be allowed to claim the minor child as a dependent for both federal and
state tax purposes; (3) Elida's retirement plan held "a vested value of * * *
$25,149[,]" was entirely marital in nature, and the entire value of the plan would be
assigned to Elida, "taking into consideration all evidence elicited at trial and the
various secretions of marital assets by" Leart; and (4) Elida owned a 2015 Toyota
Highlander and would be awarded title to the vehicle and the loan attributable
thereto.

Finally, the trial justice found that he lacked "the authority to attribute a
reduction in the mortgage on the marital domicile during the marriage, as
appreciation towards said asset, for the purposes of equity distribution[.]"  A
decision pending entry of final judgment, reflecting the directives of the written
decision, entered on December 10, 2019.  Leart filed a timely notice of appeal on
December 30, 2019, and Elida filed a timely notice of cross-appeal on January 17,
2020.  This Court consolidated the appeals for briefing and argument.

## Standard of Review

This Court has recognized that "[w]hen hearing an appeal from the Family Court * * * it is not our function to arrive at de novo findings and conclusions of fact based on the evidence presented at trial." *Curry v. Curry*, 987 A.2d 233, 237 (R.I. 2010) (quoting *Schwab v. Schwab*, 944 A.2d 156, 158 (R.I. 2008)). "Consequently, unless it is shown that the trial justice either improperly exercised his or her discretion or that there was an abuse thereof, this Court will not disturb the trial justice's findings." *Sullivan v. Sullivan*, 249 A.3d 637, 641 (R.I. 2021) (quoting *Boschetto v. Boschetto*, 224 A.3d 824, 828 (R.I. 2020)).

## Discussion

### Leart's Appeal

In his appeal, Leart challenges the trial justice's equitable distribution of property. He makes specific challenges to almost all the individual assignments of property, contending that the trial justice either erred in his designation of property as marital or abused his discretion in awarding Elida property.

"[D]etermining what constitutes marital property and dividing it in an equitable fashion is within the sound discretion of the trial court." *Sullivan*, 249 A.3d at 643 (quoting *Palin v. Palin*, 41 A.3d 248, 256 (R.I. 2012)). This Court has determined the three steps a trial justice must undertake when addressing "the equitable distribution of property in a divorce action * * *: (1) determining which assets are

marital property; (2) considering the factors set forth in G.L. 1956 § 15-5-16.1(a); and (3) distributing the property." *Saltzman v. Saltzman*, 218 A.3d 551, 561 (R.I. 2019) (quoting *McCulloch v. McCulloch*, 69 A.3d 810, 820 (R.I. 2013)). As we have recognized, "[t]he trial justice is accorded broad discretion * * *; consequently, we will not overturn the trial justice's distribution unless it is demonstrated that he or she has abused his or her discretion." *Id.* (quoting *McCulloch*, 69 A.3d at 818-19).

## The Lincoln Property

Leart argues that the appreciation in value of the Lincoln property from the time the parties married was not the result of any efforts made by the parties. Rather, he contends, the appreciation in value was passive gain due strictly to market conditions.

Pursuant to § 15-5-16.1(b), the Family Court "may assign the appreciation of value from the date of the marriage of property * * * which was held in the name of one party prior to the marriage which increased in value as a result of the efforts of either spouse during the marriage." Here, the trial justice found that the increase in value of the Lincoln property during the marriage was $90,000 and was due to the efforts of both parties. The trial justice specifically found that Elida's testimony was "forthright and credible[,]" and gave weight to her testimony that during the marriage the property was improved through installation of a new "boiler,

- 9 -

landscaping, resurfacing of the driveway * * * and painting." Although Leart's testimony may have contradicted Elida's assertions about improvements made to the Lincoln property, the trial justice specifically found Leart's testimony to be "less than credible[.]" We will not interfere with the trial justice's credibility determinations, because he did not misconceive the relevant evidence and he was not clearly wrong. *See McCulloch*, 69 A.3d at 819. The record supports the trial justice's conclusion that the value of the Lincoln property increased during the life of the marriage due to the efforts of either spouse.[2] *See* § 15-5-16.1(b).

## The HELOC

Leart also contends that the trial justice erred by apportioning 100 percent of the outstanding balance of the HELOC to him. The record reflects that the HELOC funds were first distributed on January 21, 2017, and Leart continued to withdraw money from the HELOC after divorce proceedings were instituted in July 2017. Leart contends that the HELOC "was necessary to maintain the marital lifestyle" and that the trial justice abused his discretion in finding that the HELOC was not marital debt.

---

[2] In addition, Leart broadly asserts that the trial justice also erred "by awarding one half of the appreciation in value [of the Lincoln property] to Elida." However, as discussed *supra*, the trial justice carefully examined the factors set forth in G.L. 1956 § 15-5-16.1(a) in making this distribution, and we conclude that he did not err.

- 10 -

This Court has recognized that a trial justice may assign "marital debt in the same fashion as assignments of marital assets." *Palin*, 41 A.3d at 257. We afford "great deference" to the credibility determinations and findings of fact made by the trial justice. *Id.*

Here, the trial justice specifically found Leart's testimony regarding withdrawals from the HELOC to be "less than credible" and "outrageous and completely unworthy of belief[.]" The trial justice noted that Leart used the HELOC to pay real estate taxes in 2018, even though "he had always paid the same in cash in prior years[,]" and that Leart's answers to interrogatories admitted to using the HELOC for legal fees prior to and unrelated to the divorce. Considering these findings made by the trial justice, we are of the opinion that the trial justice properly found the HELOC was not marital debt and appropriately exercised his discretion to assign Leart 100 percent of the HELOC debt. *See Palin* at 257 (affirming the assignment of student loans taken out by one spouse for the purported benefit of the parties' children as nonmarital debt where the trial justice made credibility determinations relative to whether the other spouse knew about the loans and whether the loans were actually used for the benefit of the children).

**Interest in GM Realty**

Leart's next argument is that the trial justice abused his discretion when he assigned one-half of Leart's interest in GM Realty to Elida. He contends that Elida

- 11 -

"contributed nothing and did not help, assist or participate in any way in the" business, and that the trial justice failed to determine how much of the income generated by GM Realty actually passed through to Leart.[3]

In his decision, the trial justice determined that GM Realty was established by means of an operating agreement on May 2, 2013, and that Leart is a 50 percent partner in the business. The trial justice also found that Leart "saw fit to attribute 100% of the profit and losses to himself, in contravention of said agreement[.]" Accordingly, the trial justice appropriately found that it was subject to equitable distribution upon divorce. *See Wu-Carter v. Carter*, 179 A.3d 711, 722 (R.I. 2018) (noting that "property acquired during a marriage is part of the marital estate unless specifically excluded by" § 15-5-16.1(b)). The trial justice then went on to determine that the assets of GM Realty attributable to Leart totaled $127,500, based

---

[3] In his submission to this Court, Leart seemingly conflates Wine & Cheese and GM Realty. Specifically, Leart argues that Wine & Cheese is "the functional equivalent of a subchapter S corporation" and that, therefore, the trial justice was obligated to undertake a "careful review" of the income and expenses of Wine & Cheese. We find this argument of no moment for several reasons. First, Leart's assignment of error before this Court relates to the trial justice's equitable distribution of the assets of GM Realty, not Wine & Cheese. Second, the "careful review" Leart purports was required is not applicable to the equitable distribution of marital assets. *See Trojan v. Trojan*, 208 A.3d 221, 232, 232 (R.I. 2019) (citing the Family Court Child-Support Guidelines & Administrative Order and noting that "income and expenses from self-employment or operation of a business should be carefully reviewed to determine an appropriate level of gross income available to the parent to satisfy a child support obligation"). Here, because the trial justice was undertaking to distribute marital assets, the controlling factors are those set forth in § 15-5-16.1(a), which factors the trial justice thoroughly examined.

upon the "well-reasoned" appraisal of Elida's expert; we will not interfere in the trial justice's credibility determination on this point. *See McCulloch*, 69 A.3d at 819.

In awarding Elida 50 percent of Leart's interest in GM Realty, the trial justice considered the relevant factors set forth in § 15-5-16.1(a), including (1) the length of the marriage; (2) each party's contribution towards the acquisition, preservation, and appreciation of assets; (3) each party's homemaking contributions; (4) the health and age of the parties; (5) each party's income, occupation, and employability; (6) each party's opportunity for future acquisition of assets and income; (7) defendant's wasteful dissipation and/or encumbrance of assets; and (8) the conduct of the parties during the marriage. Among many other findings, the trial justice determined that Leart "has secreted substantial cash assets" and that "his opportunity for future acquisition of capital assets and income is substantially in excess of that of" Elida. In addition, the trial justice found that Leart's sister lived at the Scituate Avenue property—which was a marital asset owned by GM Realty—rent-free since spring of 2017. We conclude that the trial justice did not abuse his discretion in distributing one-half of Leart's interest in the assets of GM Realty to Elida. Rather, the trial justice meticulously relied upon the factors set forth in § 15-5-16.1(a) and applied those factors to the evidence adduced at trial.

- 13 -

**Child Support**

Leart next submits that the trial justice abused his discretion in setting Leart's child support obligations at $277 per week. "It is well established that the appropriate award of child support is to be determined by the trial justice in his or her sound discretion[.]" *Trojan v. Trojan*, 208 A.3d 221, 229 (R.I. 2019) (quoting *Tamayo v. Arroyo*, 15 A.3d 1031, 1035 (R.I. 2011)). Accordingly, this Court will not disturb the trial justice's determination "absent a clear abuse of that discretion." *Id.* (quoting *Tamayo*, 15 A.3d at 1035).

The trial justice found, "[b]ased upon all of the testimony and exhibits introduced at trial," that Leart's earnings were approximately $180,000 annually. The trial justice buttressed this finding with an assessment of Leart's testimony regarding his earnings, which the trial justice found to be "completely unworthy of belief[.]" The trial justice noted that Leart reduced his salary from Wine & Cheese by approximately $350 per week when the divorce proceeding commenced, and he further noted that Leart failed to provide the complete financial books and records from Wine & Cheese. The trial justice had the benefit of comparing Leart's 2015, 2016, *and* 2017 personal and business tax returns, which reflected Leart's adjusted gross income for each year. In our opinion, the trial justice carefully considered all the evidence in determining Leart's income and ultimately his child support obligations, and did not misconceive evidence, nor was he clearly wrong, in setting

- 14 -

said obligation at $277 per week. *See Sullivan*, 249 A.3d at 643 (affording deference to a trial justice's determination as to a spouse's earning capacity where the trial justice was presented with evidence of the spouse's education and employment history and efforts).[4]

**Remaining Issues**

The defendant also contends that the trial justice erred in awarding the entire tax refund amount due and owing from the federal and state governments to Elida; allowing Elida to claim the minor child as a dependent for both federal and state income tax purposes; and awarding Elida a 100 percent interest in her retirement plan and a 100 percent interest in an automobile. We disagree.

The trial justice did not overlook or misconceive material evidence. He assessed the parties' credibility and found that Leart lacked candor and credibility in

---

[4] Yet again, Leart advances his argument that the trial justice was required to undertake a "careful review" of the income and expenses of Wine & Cheese because it is "the functional equivalent of a subchapter S corporation." However, we discern no evidence in the record to reveal that that Internal Revenue Service granted this special tax designation to Wine & Cheese. *See Trojan*, 208 A.3d at 224 n.2 (recognizing that the IRS must grant the Subchapter S designation to a corporation before it can be taxed accordingly). Accordingly, we conclude that this issue was not properly presented to the trial justice and, therefore, is deemed waived. *See Decathlon Investments v. Medeiros*, 252 A.3d 268, 270 (R.I. 2021) ("According to this Court's well settled raise-or-waive rule, issues not properly presented before the trial court may not be raised for the first time on appeal.") (quoting *Federal National Mortgage Association v. Malinou*, 101 A.3d 860, 865 (R.I. 2014)). Moreover, it does not escape our attention that defendant failed to turn over the complete financial records for Wine & Cheese, including the Quickbooks accounting records.

- 15 -

revealing marital assets and cash deposits. The trial justice then proceeded to thoroughly examine the factors set forth in § 15-5-16.1(a) in making these distributions. He made numerous findings about Leart's concealment of marital assets and found that Leart's "estate dwarfs that of" Elida. The trial justice was troubled by Leart's behavior and found that Elida was the primary caretaker, performing most household chores and primarily attending to the minor child's needs. Moreover, the record reflects that Leart elected to forgo receiving the tax refunds when they were issued and instead intended to have the refund amount applied to his upcoming 2018 tax filing, where it would presumably benefit only him.

All of these findings are adequately supported by the record. The trial justice did not err, and we will not disturb his findings concerning the equitable distribution of the parties' assets. *See Curry*, 987 A.2d at 240 (stating that the trial justice's assignment of property and credibility determinations in that case were afforded "great weight").

### Elida's Appeal

We now turn to Elida's appeal. She contends that the trial justice erred in finding that the Family Court "lacks the authority to attribute a reduction in the mortgage on the marital domicile during the marriage, as appreciation towards said asset, for the purposes of equity distribution[.]" Elida argues that the Lincoln

- 16 -

property increased in value during the marriage due to the fact that marital funds were expended to reduce the mortgage encumbrance. Elida maintains that this increase in value is subject to equitable distribution pursuant to § 15-5-16.1(b).

As discussed more particularly *supra*, we are satisfied that the trial justice equitably distributed the marital estate between the parties pursuant to § 15-5-16.1. Thus, we decline to address whether the increase in value of an asset acquired by a spouse prior to marriage, and solely titled in that spouse's name, includes the reduction of a mortgage paid with marital funds.

## Conclusion

For the reasons stated, we affirm the decision pending entry of final judgment of the Family Court. The papers in this case shall be returned to the Family Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Elida Mezini v. Leart Mezini. |
| **Case Number** | No. 2020-40-Appeal.<br>No. 2020-50-Appeal.<br>(P 17-3886) |
| **Date Opinion Filed** | March 1, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice John E. McCann, III |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>James A. Bigos, Esq.<br>Anthony J. Paolino III, Esq. |
| | For Defendant:<br><br>John M. Verdecchia, Esq. |